**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-40279.

BRUCE HARDWOOD FLOORS, DIVISION OF TRIANGLE PACIFIC CORPORATION, Plaintiff-Appellant,

v.

UBC, SOUTHERN COUNCIL OF INDUSTRIAL WORKERS, LOCAL UNION NO. 2713, Defendant-Appellee.

UBC, SOUTHERN COUNCIL OF INDUSTRIAL WORKERS, LOCAL UNION NO. 2713, Plaintiff-Appellee,

v.

BRUCE HARDWOOD FLOORS, A DIVISION OF TRIANGLE PACIFIC CORPORATION, Defendant-Appellant.

Jan. 21, 1997.

Appeal from the United States District Court for the Eastern District of Texas.

Before BARKSDALE, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff Bruce Hardwood Floors ("Bruce") appeals the district court's grant of summary judgment enforcing an arbitration award in favor of Defendant UBC, Southern Council of Industrial Workers, Local Union No. 2713 ("the Union") and the court's award of attorneys' fees to the Union. We reverse the district court's decisions on both issues.

I

Sheila Dixon, a Dryer Tailer/Grader on a production line in Bruce's Veneer Department, asked her supervisor for leave from work to take her truck to her daughter who needed it to go to the

doctor. Dixon's supervisor approved her request. However, while Dixon was absent from work, other employees informed her supervisor that Dixon actually needed the time off to pay an overdue electric bill. When questioned by her supervisor the next day about her reasons for needing the absence from work, Dixon admitted that she had fabricated the story about her daughter's doctor appointment. After conferring with his own supervisor, the plant's personnel manager, and the plant manager, Dixon's supervisor discharged Dixon for obtaining time off from work under false pretenses.

Dixon thereafter filed a grievance contesting her termination. Her grievance was processed in accordance with the four-step procedure in the parties' collective bargaining agreement ("CBA"). When Dixon's termination could not be resolved through the grievance procedure, the Union submitted the dispute to arbitration.

The arbitrator held that Bruce should have applied progressive discipline provisions of the CBA, rather than discharge provisions.[1] He concluded that Bruce's contention that Dixon's

---

[1] The pertinent discharge and progressive discipline provisions of the CBA are as follows:

> **Article 24, Section 2.** The Company will take action against an employee based upon conduct which warrants immediate discharge, or for other conduct, while less serious, which initially warrants less severe discipline. (a) An employee will be discharged immediately without prior warning for the following or similar reasons:
>
> > (16) Stealing, immoral conduct, or any act on the Company premises intended to destroy property or inflict bodily injury.
>
> (b) An employee will be subject to progressive discipline for the following or similar reasons:

conduct warranted discharge under the CBA was "unreasonable," but found that Dixon had "fabricated her story."[2]  The arbitrator

> (1) Absenteeism.
>
> (2) Tardiness.
>
> (3) Inefficiency or poor work performance.
>
> (4) Abuse of rest periods and lunch periods.
>
> (5) Neglecting duty or failing to maintain work standards.
>
> **Section 3.** In the case of offenses where the application of progressive discipline would be appropriate as set forth in (b) above, the Company shall endeavor to adhere to the following order:
>
> > (a) Verbal warning with written record of warning for the first incident.
> >
> > (b) Written warning for the second incident.
> >
> > (c) Disciplinary suspension of three (3) unpaid days for the third incident.
> >
> > (d) Discharge for the fourth incident.
>
> In agreeing to the foregoing, however, the Company does not intend to waive the exercise of its right to discipline or discharge without following such order in any case where it determines that the seriousness of the particular offense involved warrants discipline of a different order.

[2]Specifically, the arbitrator concluded:

> The Grievant's conduct was not such that demands the supreme industrial penalty of immediate discharge. The Company wrongfully attempted to apply the referenced provisions of the Collective Bargaining Agreement to the Grievant's conduct.  The parties negotiated a progressive discipline policy which the Company failed to follow.
>
> Considering the evidence adduced at the arbitration hearing, and considering the presentations made by the parties in their post hearing briefs, the Arbitrator has adequate reason to substitute his judgement [sic] for that of Company's management.

reinstated Dixon with full seniority and back pay and imposed a ten-day suspension from work.

Bruce then filed a complaint in district court seeking vacatur of the arbitration award. The Union subsequently filed a complaint seeking enforcement of the award. The district court consolidated the actions and the parties filed cross-motions for summary judgment. The district court granted the Union's motion and denied Bruce's motion, thereby enforcing the arbitration award.[3] The district court also awarded the Union attorneys' fees. Bruce appeals.

II

Bruce argues that the arbitrator improperly ignored the terms of the parties' CBA and that the district court should therefore have vacated the arbitration award. Where a party appeals a grant of summary judgment in a suit to vacate an arbitration award, we review the district court's ruling *de novo. Houston Lighting & Power Co. v. International Bhd. of Elec. Workers, Local Union No. 66,* 71 F.3d 179, 181 (5th Cir.1995), *cert. denied,* --- U.S. ----, 117 S.Ct. 52, 136 L.Ed.2d 16 (1996). As long as the arbitrator's decision draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, we will decline to vacate the award. *Id.* at 182. In applying the "essence" test, we have stated that an arbitration

---

[3]In granting the Union's motion for summary judgment to enforce the arbitration award, the district court found that "the arbitrator confined his decision and remedy to the interpretation and application of the collective bargaining agreement" and that the arbitrator "provide[d] an award which was within the essence of the collective bargaining agreement."

award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.... [T]he award must, in some logical way, be derived from the wording or purpose of the contract." *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1325 (5th Cir.1994) (citation omitted).

Although we accord an arbitrator's decision considerable deference regarding the merits of the controversy, the CBA circumscribes his jurisdiction. *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599, 602 (5th Cir.1989), *cert. denied,* 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990). Where the arbitrator exceeds the express limitations of his contractual mandate, judicial deference ends and vacatur or modification of the award is an appropriate remedy. *Id.*

After reviewing both the CBA and the arbitration award, we conclude that the award is not "derived from the wording or purpose of the contract." *Executone,* 26 F.3d at 1325. Article 9, § 3 of the CBA binds an arbitrator to the terms of the contract. *See id.* ("No arbitrator shall have authority to add to, amend or depart from the terms of this written Agreement...."). The arbitrator found, based on Dixon's own admission, that Dixon lied to obtain time off from work. Lying is specifically covered by Article 24, § 2(a) of the CBA, which states that an employee will be discharged immediately for engaging in immoral conduct.[4] In refusing to apply

---

[4]The dissent criticizes us for interpreting the term "immoral conduct." We do not. By definition, lying is immoral conduct—that is, it is inconsistent with principles of morality. *See* BLACK'S LAW DICTIONARY 751 (6th Ed.1990).

this provision, the arbitrator exceeded the express limitations of his contractual mandate.[5]

The arbitration award is further undermined by the penalty imposed. Nowhere does the CBA provide for a penalty of a ten-day suspension from work. Although the Supreme Court has stated that "[n]ormally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct," *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 41, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987), the Court clarified that "[t]he parties, of course, may limit the discretion of the arbitrator in this respect...." *Id.* By so doing, it is possible to vest in the employer complete discretion over terminations which the arbitrator is not free to usurp. *Delta Queen,* 889 F.2d at 602.

As noted, the CBA in this case prohibits an arbitrator from adding to, amending or departing from the terms of the agreement. Hence, once the arbitrator found that Dixon fabricated her story, he was bound to impose the penalty provided by the CBA for that conduct. *Id* at 604 ("If a collective bargaining agreement defines "proper cause' to include a non-exhaustive list of offenses, an

---

[5]The arbitrator concluded that Bruce should have applied the CBA's progressive discipline policy to Dixon's conduct, but did not specify which of the five enumerated progressive discipline offenses incorporated Dixon's lie. Likewise, though the Union urges that Dixon's conduct deserves progressive discipline because it is similar to the listed progressive discipline offenses, it also fails to specify which of the offenses implicates lying. For our part, we discern no similarity between lying and absenteeism, tardiness, inefficiency or poor work performance, abuse of rest periods and lunch periods, or neglect of duty or failure to maintain work standards. The plain language of the progressive discipline policy simply does not support a finding that the policy applies to lying, particularly in light of the clear applicability of the discharge provisions to Dixon's conduct.

arbitrator cannot ignore the natural consequence of his finding that a listed offense was committed."). In fashioning a remedy not contained in the CBA, despite finding that Dixon committed an offense covered by the CBA, the arbitrator exceeded his contractual authority by adding to, amending and/or departing from the terms of the agreement. As a result, we vacate the arbitration award. *See Houston Lighting & Power Co.,* 71 F.3d at 179 ("[T]he rule in this circuit, and the emerging trend among other courts of appeals, is that arbitral action contrary to express contractual provisions will not be respected."). Thus, we reverse the district court's grant of summary judgment in favor of the Union and reinstate Dixon's discharge. *See Container Prods., Inc. v. United Steelworkers of Am., and its Local 5651,* 873 F.2d 818, 820 (5th Cir.1989) (affirming district court order vacating remedy imposed by arbitrator and reinstating discharge).

## III

Bruce also contends that the district court abused its discretion in awarding the Union attorneys' fees. We review an award of attorneys' fees for an abuse of discretion. *International Union of Elec., Radio and Mach. Workers v. Ingram Mfg. Co.,* 715 F.2d 886, 893 (5th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984). An award of attorneys' fees is permitted when a party has refused to abide by an arbitration decision "without justification." *International Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co. ("Texas Steel II"),* 639 F.2d 279, 283 (5th Cir. Unit A 1981).

Because we have concluded that the arbitrator exceeded his

contractual authority, we do not find that Bruce's refusal to abide by the arbitration decision was without justification. *See id.* at 283-84 (explaining that in cases where arbitration award exceeds power conferred upon arbitrator, challenge is proper and not without justification). Hence, we reverse the district court's award of attorneys' fees to the Union.

IV

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of the Union, VACATE the arbitration award and reinstate Dixon's discharge. In addition, we REVERSE the district court's award of attorneys' fees to the Union.

BENAVIDES, Circuit Judge, dissenting:

I dissent. The majority substitutes its own interpretation of the collective bargaining agreement ("CBA") for the arbitrator's interpretation. In doing so, it disregards fundamental Supreme Court precedent setting forth the deferential standard for reviewing arbitration awards. An arbitration award can be overturned only if it fails to draw its essence from the collective bargaining agreement. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). A corollary of this principle is that we cannot overturn an arbitration award even if "the arbitrator misread the contract." *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 36-37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error

does not suffice to overturn his decision." *Misco,* 484 U.S. at 38-39, 108 S.Ct. at 371.

The arbitrator in this case construed the CBA in light of the evidence before him and determined that the company's decision to terminate Dixon involved an unreasonable construction of the CBA and that the company should have imposed progressive discipline instead. The arbitrator's conclusions are rationally inferable from the CBA. No more is required. Accordingly, I would affirm the judgment of the district court upholding the award.

The facts before the arbitrator are somewhat more textured than the court's opinion reflects. Dixon's termination arose from an unpaid 45-minute absence from work. Her electricity had been turned off because she had failed to pay her bill. She planned to pay the bill at the end of the work day on Friday, after she received her paycheck. But during her morning break that day, she discovered that unless she paid the bill by noon, she would have no electricity for the entire weekend. That morning, she asked her supervisor, Gary Henderson, for an hour off for a personal reason. Henderson demanded details about why she needed the time. Instead of telling him the undoubtedly embarrassing truth (that her electricity had been shut off because she had failed to pay her bill), she told him that she needed to take her truck to her daughter who had a doctor's appointment. Henderson told her that she could leave, but that it would be an "unexcused absence." She clocked out, went to pay the electricity bill, and returned within 45 minutes. In the meantime, Dixon's co-workers told her supervisor that she had fabricated the reason for leaving work.

When Dixon returned to work the next day, her time card was missing, and she was told that she had been discharged. At the time of Dixon's discharge, the company stated that it was terminating her for obtaining a leave of absence under false pretenses.[6]

Neither the CBA's list of dischargeable offenses nor the list of offenses for which progressive discipline will be imposed specifically covers Dixon's misconduct. Both lists are non-exhaustive and allow punishment of "similar offenses" under their terms. It was the arbitrator's task to determine whether her conduct was more closely analogous to a dischargeable offense or a progressive discipline offense. The arbitrator evidently decided that Dixon's misconduct in fabricating a story to get a 45-minute unpaid break to pay her electricity bill was more akin to a progressive discipline offense, such as absenteeism or "abuse of rest period and lunch periods," than to any dischargeable offense under the CBA. Thus, the arbitrator determined that the company should have followed its progressive discipline policy rather than discharging Dixon. In reaching this conclusion, the arbitrator necessarily interpreted the CBA. It is not our business to overturn that interpretation, even if we would have decided the matter differently.

_____

[6]"Obtaining a leave of absence under false pretenses" is not listed as a dischargeable offense under the CBA, but rather as a ground for loss of seniority. Thus, the arbitrator reasonably concluded that the reason for termination given by the company at the time of Dixon's discharge did not provide just cause for her termination. Although the company continues on appeal to assert this as a just cause for termination, the majority does not rest its opinion on this provision.

The arbitrator concluded that the company's attempt to characterize Dixon's conduct as "immoral conduct" within the meaning of Article 24, Section 2(a)(16) of the CBA was unreasonable. That section allows the company to terminate employees immediately for "stealing, immoral conduct, or any act on the Company premises intended to destroy property or inflict bodily injury." The majority erroneously states that "lying" is "specifically covered" by this provision and concludes that this provision is dispositive. Lying is not, however, specifically listed in this provision, nor is immoral conduct expressly defined by the CBA to include lying. Instead the majority's conclusion requires an inferential step, that any lie is "immoral conduct" justifying immediate termination within the meaning of the CBA. In other words, the majority *interprets* the term "immoral conduct" and comes to a conclusion different from that reached by the arbitrator. That is not the court's proper role. In reviewing the arbitrator's construction of the phrase "immoral conduct," the issue is not what we believe to be moral or immoral conduct in the philosophical sense. The issue before the arbitrator was whether Dixon's conduct rose to the level of "immoral conduct" as that term is used in the CBA.

The arbitrator evidently concluded that Dixon's fabrication, though it demonstrated "poor judgment," did not rise to the level of "immoral conduct" within the meaning of this offense. An arbitrator has discretion to decide whether particular conduct constitutes a dischargeable offense within the meaning of a CBA, as the First Circuit aptly explained in *Georgia-Pacific Corp. v. Local*

*27, United Paperworkers Int'l Union,* 864 F.2d 940 (1st Cir.1988) (holding that where the arbitrator found that an employee committed an offense listed as a ground for discharge, he lacked discretion to order the employee's reinstatement). The CBA in *Georgia-Pacific* provided that "dishonesty" was an offense for which an employee could be discharged. *Id.* at 945. As the court explained, "It is ... up to an arbitrator to decide whether a given pattern of conduct amounts to dishonesty. For example, an arbitrator may decide that stealing a company pencil does not amount to dishonesty for purposes of immediate discharge." *Id.* at 945 n. 2. Similarly, in this case, it was up to the arbitrator to decide whether Dixon's conduct rose to the level of "immoral conduct" for the purposes of immediate discharge. I fail to see how the arbitrator could be compelled to find that Dixon's action was immoral conduct, especially when the CBA itself specifically lists "obtaining a leave of absence under false pretenses" as a ground for loss of seniority, but not as a ground for discharge.

The arbitrator's apparent interpretation of "immoral conduct" also draws support from the context in which the phrase appears. It is a fundamental canon of construction that a word is known by its company. Applying this principle, "immoral conduct" should be construed in relation to the other offenses listed with it in Section 2(a)(16): "stealing" and "any act on the Company premises intended to destroy property or inflict bodily injury." The arbitrator could have concluded that immoral conduct in this context does not encompass any act that violates the Golden Rule, but only conduct that rises to the serious level of stealing or

intentional infliction of property damage or personal injury. Although this court may not agree with the arbitrator's interpretation and indeed may be convinced that the interpretation was a "serious error," it may not overturn the award simply because it disagrees.

The company and the court rely heavily on *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599 (5th Cir.1989), *cert. denied,* 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990). This case is easily distinguished from *Delta Queen.* In that case, the CBA expressly listed "carelessness" as a ground for discharge, and the arbitrator expressly found that the discharged riverboat captain was "grossly careless." *Id.* at 601. In that circumstance, we held that the arbitrator, having found that the riverboat captain had committed a dischargeable offense, was not free to ignore the terms of the CBA. If the arbitrator in this case had made an express finding that Dixon engaged in immoral conduct, then, of course, he could not ignore the terms of Article 24, Section 2, which makes immoral conduct a dischargeable offense. But he made no such finding.

The majority further suggests that the fact that the remedy imposed by the arbitrator, a ten-day suspension, is not provided for by the CBA agreement somehow undermines the arbitrator's decision that the company lacked just cause to terminate Dixon. But appropriate discipline for the offense is a distinct question from whether the termination was with just cause. The parties' submission of two questions to the arbitrator ("Was the Grievant, Sheila Dixon, discharged for just cause? If not, what is the

remedy?") underscores the separateness of the two inquiries. That the arbitrator imposed a harsher punishment on Dixon than would be available to the company under the CBA does not undermine the arbitrator's decision on the termination question. Further, it is difficult to see how the company can complain of the imposition of a punishment more severe than that which it would have been able to impose under the CBA's progressive discipline policy. A three-day unpaid suspension is the most severe progressive discipline provided for by the CBA, short of termination. At oral argument, the company in essence conceded that if it lacked just cause to terminate Dixon, it does not seek a remand for the purpose of imposing a lesser punishment on Dixon under the CBA's progressive discipline policy.

The arbitrator was charged with deciding whether the company had just cause to discharge Dixon. To do so, he had to evaluate Dixon's particular conduct and determine whether that conduct fell within the CBA's discharge provision. He concluded that, plotted on a spectrum of bad behavior, Dixon's actions fell closer to absenteeism or abuse of a rest period than to stealing, immoral conduct, or intentional infliction of personal injury or property damage. Unlike the majority, I would not overturn the arbitrator's decision merely because I do not agree with its outcome. Clearly, his decision drew its essence from the CBA. I would affirm the judgment of the district court, including the award of attorney's fees. *See International Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.,* 639 F.2d 279, 283 (5th Cir. Unit A 1981). The district court did not clearly err in concluding that

the company's challenge to the arbitrator's award was "without justification."

. . . . .

. . . . .

. . . . .