**THE DOW CHEMICAL COMPANY Plaintiff,**

v.

**LOCAL NO. 564, INTERNATIONAL UNION OF OPERATING ENGINEERS Defendant.**

No. G–02–462.

United States District Court, S.D. Texas, Galveston Division.

Dec. 13, 2002.

---

Jack C Brock, Mills Shirley et al, Galveston, for Dow Chemical Company, plaintiff.

Jim Hart, Williams Bailey, Byron Miles Buchanan, Williams Bailey Law Firm, Houston, for Local No. 564, International Union of Operating Engineers, defendant.

## ORDER PARTIALLY DENYING AND PARTIALLY GRANTING CROSS–MOTIONS FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Dow Chemical Company ("Dow") brings this Summary Judgment motion seeking review of an Award from an arbitration proceeding between the Parties. The subject matter of the arbitration was based upon Local No. 564, International Union of Operating Engineers' ("the Union") allegations that Dow wrongfully terminated twelve Union mem-

bers in contravention of the Parties' Collective Bargaining Agreement ("CBA"). Dow asks this Court to vacate the Arbitrators' reinstatement of Freddie Bonner, one of the twelve Grievants, and to vacate part of the Arbitrators' Opinion that required Dow to pay past vacation time, 401(k) benefits, and bonuses. The Union simultaneously filed its Motion for Summary Judgment urging this Court to affirm the Arbitration Award in its entirety. After reviewing the Parties' cross-motions for summary judgment and for the reasons articulated below, the Court **PARTIALLY GRANTS** Dow's Motion seeking to vacate the Award's reinstatement of Freddie Bonner and **VACATES** the reinstatement of Bonner, and **PARTIALLY DENIES** Dow's Motion seeking to partially vacate the Arbitrators' Award of past benefits. Similarly, the Court **PARTIALLY DENIES** the Union's Motion asking to affirm the reinstatement of Bonner, and **PARTIALLY GRANTS** the Union's Motion to affirm the rest of the Arbitrators' Award.

## I. BACKGROUND

Dow maintains its largest United States manufacturing facility in Freeport, Texas. Dow has over 5,500 employees at that facility, and approximately 1,100 of those employees are Union members. In early June 2000, Dow commenced a plan to determine if its employees were sending, receiving, and storing inappropriate materials on its computers at the Freeport facility. Dow decided to take a "snapshot" of all Dow employees' computers on May 15, 2000, and then to systematically sort through all of the emails that were on the employees' computers that day. This snapshot revealed that 254 employees had saved, filed, and/or sent

sexually related, violent, and other inappropriate emails that Dow felt violated its specific policies.[1] Of course, the actual participation and involvement of each employee varied significantly. As such, Dow created a set of criteria so that discipline, if any, could be assessed in a consistent manner based upon the degree of each employee's participation in activities that were contrary to Dow's expectations. The report took into account what type of material Dow found (broken into three categories based upon offensiveness), what the employee did with the material (divided into several classes of misconduct, such as circulating the materials inside the Dow facility), and the general magnitude of each employee's involvement in sending offensive emails to others (the frequency of the misconduct, referred to as the "intensity score").

Based upon this investigation that culminated into a report, Dow discharged twenty employees in August. Of the twenty employees, twelve are Union members. In response to these terminations, the Union filed grievances challenging the termination of the twelve Union member employees. The Union complied with the applicable dispute resolution sections of the CBA (Articles XVIII, XIX), and demanded arbitration on behalf of the twelve discharged Union members. Dow and the Union agreed that the grievances would be determined at a single hearing during the week of January 14, 2002, by three arbitrators: Diane Dunham Massey, Francis C. Quinn, and Barron Baroni. The issue presented was framed as follows:

> Did the Company, Dow Chemical, violate the Collective Bargaining Agreement when it terminated the employment of Sandra Woode–Wicke, Eddie

---

1. Dow determined that the 254 employees' computer activities violated its Respect and Responsibility Policy, Harassment Policy, Internet Usage Policy, and Corporate Computer Policy.

Morales, Jerry Davis, R.K. Harding, David Trevino, John Olson, Fred Bonner, Pat Linscombe, Van Hawkins, Darrell Pesch, John (Pat) Grace, and R.L. Klutz? If so, what is the appropriate remedy?

The CBA referred to above was originally negotiated by Dow and the Union on May 18, 1984, and subsequently amended six times to its current form, which became effective on December 7, 1998. Article XIX of the CBA specifically limits the Arbitration's jurisdiction, requiring that any decision "shall be within the scope and terms of this agreement [the instant CBA] and shall not change any of its terms or conditions." Consistent with Article XIX, the Parties agreed in their submission to the Arbitrators that the "authority of the arbitrators and all other aspects of the hearing will be governed by the collective bargaining agreement."

On April 1, 2002, the Arbitrators handed down their Award. The Arbitrators first concluded that they would apply the "generally accepted standard of just cause," even though they were not bound to do so since the CBA fails to mention just cause. Then, the Arbitrators found that Dow enforced its rules and assessed discipline inconsistently, and that there was an indication of disparate treatment. Additionally, the Arbitrators found that Dow failed to consider positive information-such as tenure and excellent work records-that would have substantially mitigated Dow's decision to discharge the twelve Grievants. The Arbitrators concluded:

A review of each Greivant's record indicates there is a basis for discipline. However, the termination appears to be disparate treatment when compared to what Management knew, tolerated and had done in the past, as well as the present. The Question at Issue must be answered in the affirmative. Based on the record and guided by the Company's Progressive Discipline Process, we conclude that termination of employment was excessive, unfair, without just cause, and in violation of their terms of the CBA. The termination shall be converted to suspensions for each of the Grievants. In addition, each Grievant must repeat training on sexual harassment and on the protocol for use of the Company's email.

Ultimately, their Award, subject to this Court's review, reinstated all twelve Grievants without backpay allowance. Thus, the Award's discipline of the Grievants was to suspend them without pay for roughly eighteen months (late August 2000 through April 2002). Furthermore, the Arbitrators ordered that upon reinstatement, the Grievants "are entitled to seniority rights and benefits as if they had never been discharged."

On April 2, 2002, Dow filed a Motion for Reconsideration asking that the Arbitrators reconsider their reinstatement of one Grievant, Freddie Bonner. Dow produced evidence that Bonner had previously signed a "Last Chance Agreement" ("LCA") on October 21, 1997.[2] Bonner, the Union, and Dow were signatories to the LCA, which essentially placed Bonner on probation until November 9, 2000. In the LCA, Dow listed several events and reasons why Bonner had previously failed to live up to Dow's performance criteria

---

**2.** A last chance agreement is an agreement that usually takes place following an employee incident that calls for discipline. The agreement is between the employee and employer. Essentially, a last chance agreement is a written agreement that the employee will be on probation for a stated amount of time, and that if the employee acts contrary either to stated standards in the last chance agreement or to standards contained in company policies, then the employee will be fired.

and job expectations. One of the LCA's enumerated reasons for the necessity of the LCA is "Violation of Dow and Texas Operations policy by possessing sexually oriented materials on Dow property." Further, the LCA expressly states the consequences for violating the LCA "failure to meet any job performance criteria, requirements, policies, and/or expectations *will result* in your termination." (emphasis added). For these reasons, Dow submitted a Motion asking the Arbitrators to find that Bonner's violation of the LCA prevented him from being reinstated, regardless of Dow's actions concerning the email investigation.

The Union responded arguing that Dow had invalidated the LCA by a subsequent last chance agreement. Specifically, on June 10, 2000, Bonner transferred seed resin into the wrong tank, which is grounds for discipline. He received a letter on June 16, 2000, titled "Written Warning—Disciplinary Time-off/ Last Chance" ("Letter"), that suspended him for a short period of time for his recent mistake. The Letter specifically reminded him of the current LCA in his file and warned that subsequent violations would not be tolerated. The Union urged that the Letter was actually a new last chance agreement, and since the alleged new last chance agreement was dated after Dow began its investigation into the emails (Dow began investigating in early June), the Letter must have taken into account Bonner's email violations as well. The Arbitrators agreed with the Union and denied Dow's Motion in their April 8, 2002 Clarification ("Clarification 1").

Subsequently, both Dow and the Union requested the Arbitrators to clarify the Award language that states Grievants "are entitled to seniority rights and benefits as if they had never been discharged." On June 10, 2002, the Arbitrators unanimously ruled that four specific benefits needed clarification-vacations, performance awards, 401(k) benefits, and Freddie Bonner's petition to be returned to the position of "Special Relief Operator." In the June 10, 2002 Award ("Clarification 2"), the Arbitrators first awarded past vacation allowance, stating:

> Each Grievant is entitled to the vacation or vacation allowance that they otherwise would have received had they worked the entire time since August, 2000 for each year. Thus, the Grievants are entitled to vacation time and pay or vacation allowance for 2000, 2001, and 2002, if they have not already received it. Whether the Grievants take vacation time with pay or a vacation allowance for 2002 is the choice of each Grievant.

Second, the Arbitrators ruled that the Grievants are eligible to receive a 2002 Performance Award, but are ineligible for past 2000 and 2001 Performance Awards. Specifically, Grievants are entitled to a Performance Award if other comparably classified employees without discipline would receive one. Third, the Award required Dow to allow for past 401(k) contributions by ordering that:

> Each Grievant is entitled to be compensated the sum of the maximum amount he/she personally, would have been allowed to contribute for the time period that he/she was off work. Each Grievant is also entitled to be compensated for whatever matching Company funds that were allowed during his/her time off work. The calculation shall be based on the following hours at each Grievant's applicable rate of pay. For 2000, 600 hours for the period off work. For 2001, 2000 hours for the time off work. For 2002, 600 hours for the period before reinstatement. The Arbitrators recognize that the sum to which the Grievants are entitled may not qualify under the

terms of the 401(k) Plan for investment in the 401(k) Plan. However, any monies eligible to be invested in the 401(k) Plan should be so invested. All other monies shall be given to each individual Grievant in a lump sum for their private investment or other use. The lump sum shall have applicable taxes withheld.[3]

Last, the Arbitrators ordered that Freddie Bonner be returned to the position of Special Relief Operator and be paid the corresponding applicable rate of pay (which the Arbitrators determined entitled Bonner to a $1.00 per hour premium). Having determined the background of the instant action, the Court now turns to the Parties' contentions and the applicable substantive law that dictates the outcome of this case.

## II. ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id. at 248, 106 S.Ct. at 2510. Rule 56(b) allows a defendant to move for summary judgment at any time. See Fed.R.Civ.P.

56(b). Accordingly, the Court may grant summary judgment any time before trial. See Bynum v. FMC Corp., 770 F.2d 556, 577–78 & n. 32 (5th Cir.1985). In this case, the Parties and this Court agree upon all material facts and the questions before the Court are purely legal. The issues that this Court must address are set out below:

1. Whether or not the Arbitrators exceeded their authority by ordering the reinstatement of Freddie Bonner, considering that Bonner was subject to the LCA?

2. If the Arbitrators did not exceed their authority by reinstating Freddie Bonner, did the reinstatement violate the public policy of ensuring that working environments are free from sexual harassment, considering Bonner's computer contained sexually offensive materials in violation of Dow's policy?

3. If Freddie Bonner was properly reinstated as Special Relief Operator, did the Arbitrators exceed their authority by ordering an hourly raise ($1.00) that the CBA allegedly reserves only for employees that work irregular hours regularly?

4. Whether or not the Arbitrators exceeded their authority by awarding each Grievant vacation allowance for 2001?

5. Whether or not the Arbitrators exceeded their authority by ordering Dow to compensate Grievants, in a lump sum payment, the equivalent of all 401(k) benefits that Grievants would have received if they had worked full years for 2000, 2001, and 2002?

---

**3.** Following the awards of past vacation allowance for 2001, eligibility for a 2002 Performance Award, and past 401(k) benefits, the Arbitrators included the following language: "This is a remedy ordered as a result of the Arbitration pursuant to the authority vested in the Panel of Arbitrators by the Parties for the instant Arbitration. The remedy provided is not necessarily an interpretation of rights or eligibility under the Collective Bargaining Agreement."

6. Whether or not the Arbitrators exceeded their authority by finding that Grievants shall receive a 2002 Performance Award if other comparable employees that were not disciplined receive an award?

*B. Standard of Review for Determining If the Arbitration Award Exceeded the Arbitrators Authority*

 This Court has jurisdiction to review this arbitration proceeding pursuant to 29 U.S.C. § 185. However, the Court's review is extremely limited in its scope. *See Delta Queen Steamboat Co. v. District 2, Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599, 604 (5th Cir.1989). The Court cannot vacate an arbitration award as long as the award "draws its essence from the collective bargaining agreement" and is not based on the arbitrator's "own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). "In applying the 'essence' test, we have declared that an arbitrator's award 'must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.'" *Houston Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66,* 71 F.3d 179, 183 (5th Cir.1995) (quoting *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1325 (5th Cir.1994)). "The 'essence' standard is to be interpreted expansively so as to uphold the award, rather than restrictively." *Int'l Ass'n of Machinists v. Texas Steel Co.,* 538 F.2d 1116, 1121 (5th Cir.1976) (quoting *United Steelworkers v. United States Gypsum Co.,* 492 F.2d 713, 731–32 (5th Cir.1974)). This Court must affirm the award if "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987).

 In crafting an arbitration award, an arbitrator may look for guidance from many sources so long as the collective bargaining agreement serves as the foundation of his award. *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361. However, this Court is charged with a duty "to scrutinize the award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." *Delta Queen,* 889 F.2d at 602. Vacating an award is the appropriate remedy if an arbitrator exceeds the contractual authority granted to him by the collective bargaining agreement. 9 U.S.C. § 10(a). "[W]here the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Delta Queen,* 889 F.2d at 602. Specifically, this Court will vacate an arbitration award that is contrary to the express and plain language of the collective bargaining agreement. *See Gulf Coast Indus. Workers v. Exxon Chem. Americas,* 863 F.Supp. 423, 426 (S.D.Tex. 1994) (citing *Interstate Brands Corp., Butternut Bread Div. v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135,* 909 F.2d 885, 889 (6th Cir.1990)).

*C. Grievant Freddie Bonner's Reinstatement Is Contrary to the October 21, 1997 Last Chance Agreement*

 Dow urges this Court to grant its Motion and vacate the Award's reinstatement of Freddie Bonner. Dow contends that the LCA is a supplement to the CBA and that reinstatement is contrary to the express provisions of the LCA. In particular, the LCA expressly states the consequences for violating the LCA "failure to meet any job performance criteria, re-

quirements, policies, and/or expectations *will result* in your termination." The Union does not dispute the LCA; in fact, both the Union and Freddie Bonner were signatories to it. Rather, the Union advances three arguments as to why the LCA does not mandate Bonner's termination. First, the Union points to the LCA's language that "any future performance problems or retaliation against co-workers associated with the investigation of your performance will result in your [Bonner's] termination." The Union urges that violations of Dow's email policy is not an actual performance issue, and therefore, the Award's reinstatement of Bonner is not contrary to express LCA contractual provisions because the LCA only dealt with performance issues. Alternatively, the Union argues that the Letter sent on June 16, 2000, invalidated the LCA. The Union's rationale is that the Letter was sent after Dow began its computer investigation in early June, and consequently, the Letter was a new "agreement" that took into account Bonner's LCA, his email conduct, and the conduct that was the basis of the Letter. Last, the Union cites *Weber Aircraft, Inc. v. Gen. Warehousemen and Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001), for the proposition that any time a collective bargaining agreement lacks a definition of "just cause" and lacks fixed levels of punishment for certain offenses, any arbitration award automatically draws its essence from the collective bargaining agreement since the collective bargaining agreement is ambiguous as to discipline. Thus, since the instant CBA did not have any specifications concerning discipline, any discipline the Arbitrators levy meets the essence test since the CBA is ambiguous on what discipline should be assessed for violations of the CBA.

 Last chance agreements are considered a supplement to a collective bargaining agreement and are considered equally as binding upon an arbitrator. *Int'l Union of Operating Eng'rs, Local 351 v. Cooper Natural Res., Inc.*, 163 F.3d 916, 919 (5th Cir.1999) (discussing the Fifth Circuit's adoption of this principle in accordance with three sister circuits). "[A]n arbitrator ignoring the explicit terms of a last chance agreement is owed no deference, and his award must be closely scrutinized. This seemingly harsh rule is necessary because last chance agreements constitute formal contractual settlements of labor disputes." *Id.* Furthermore, last chance agreements typically supercede a collective bargaining agreement since last chance agreements follow collective bargaining agreements in time. *Id.*

In the instant case, the LCA is clear. The LCA, signed and dated October 21, 1997, states:

> The following is a summary of events and/or issues which are representative of your failure to meet performance criteria, role requirements, policies, and/or job expectations within the last year: ... Violation of Dow and Texas Operations policy *by possessing sexually orientated materials* on Dow property.

(emphasis added). Furthermore, under the title "Disciplinary Action," the LCA states:

> "You will be on a three year period of probation beginning on your first day back at work [November 10, 1997], and during that time, failure to meet any job performance criteria, requirements, policies, and/or expectations *will result in your termination.*"

(emphasis added). It is undisputed that Bonner was terminated in August, 2000, within the LCA's three year probationary period, as part of Dow's terminations resulting from its internal email investigation. Under *Cooper*, the Court owes no

deference to the Arbitrators' reinstatement of Bonner because it was contrary to the LCA's express language-violating the LCA (by possessing sexually oriented materials) within the probationary period *"will result in your termination."* 163 F.3d at 919. The Court compliments Union's counsel on its well-briefed and creative arguments. However, for reasons articulated below, the Court concludes that they are without merit.

As to the Union's first argument, the Court fails to see how the LCA's language above can only cover "performance issues" when the LCA expressly mentions possession of "sexually oriented materials" as grounds for automatic termination. The LCA expressly states that possession of sexually related materials within the probation period *will* result in termination. Bonner was caught with sexually related materials, and he was terminated at the end of Dow's email investigation. Any other result disregards the Parties' agreement, as crystalized in the LCA, and must be set aside.

 The Union's second argument must also fail. Temporally speaking, the June 16, 2000 Letter was sent out roughly one week after Dow began its investigation. However, although Dow technically might have been aware of Bonner's conduct since the investigation actually started approximately one week before the Letter's date, Dow did not finish its investigation until August of 2000.[4] At that time, Dow terminated nineteen other employees along with Bonner. Thus, although technically the investigation began right before the creation of the Letter, the investigation did not end until approximately two months later. More impor-

tantly, the Letter, titled "Written Warning–Disciplinary Time-off/Last Chance," dated June 16, 2000, cannot be seen as a modification of the LCA. Dow created the Letter to discipline Bonner for his mistaken transfer of seed resin, which is completely unrelated to the enumerated reasons that formed the basis of the LCA. Additionally, the Letter cannot be considered a subsequent last chance agreement that modifies the LCA because the Letter is not an actual agreement. Neither Bonner nor the Union signed the Letter. Also, the Letter does not mention or even hint that it might be a modification of the LCA. Rather, the Letter specifically reminds Bonner that he is subject to the LCA in his file and that he is dangerously close to termination. The Union's argument is premised solely upon the fact that the Letter was sent approximately one week after the investigation began. Even though the Court feels the time-line is not as significant as the Union suggests for the reasons discussed above, the Union's argument fails because there is not one piece of evidence that the Parties' manifested an intent to modify the LCA by the Letter. On that basis, the Court finds that the Union's second argument for affirming Freddie Bonner's reinstatement is also without merit.

Last, *Weber* is factually similar to the instant case. *See* 253 F.3d at 825. The CBA, like the collective bargaining agreement in *Weber,* does not contain a clause defining just cause nor does it contain a section that prescribes discipline levels for violations of the CBA. *Id.* If Bonner had only violated the CBA, *Weber* would control because Bonner's reinstatement arguably would flow from the essence of the

4. Dow's investigation took a couple of months primarily because once they determined that 254 of its employees were violating its computer policy, Dow created a formula with

different criteria for determining the appropriate discipline for the corresponding level of conduct.

CBA since the CBA does not have any provision that requires the imposition of discipline for certain violations, nor provides a range of possible punishments, nor gives any guidance on the consequences of violating the CBA; hence, the CBA is so ambiguous that any arbitration award that disciplined or did not discipline Bonner for his violation of the CBA would likely meet the essence test solely because of the CBA's ambiguity. However, Bonner violated both the CBA and the LCA. The LCA expressly states that any possession of sexually related materials *will* result in termination. This Court owes no deference to the Arbitrators' decision to reinstate Bonner contrary to the LCA's express language. *Cooper,* 163 F.3d at 919. Therefore, the LCA, distinguishes the facts of this case from *Weber,* and mandates that this Court vacate the Award's reinstatement of Bonner, consistent with *Cooper. Id.* For all of the reasons articulated above, the Court **PARTIALLY GRANTS** Dow's Summary Judgment and **VACATES** the Award's reinstatement of Bonner, and **PARTIALLY DENIES** the Union's Summary Judgment asking to affirm the Award's reinstatement of Bonner. Accordingly, the second and third issues before the Court are moot because Bonner's reinstatement is properly vacated.

D. *The Arbitrators' Award for Past Benefits Draws Its Essence from the Collective Bargaining Agreement*

In Clarification 1, the Arbitrators stated, "It is the opinion of the arbitration panel that the Grievants are entitled to all seniority rights and benefits as if they had never been discharged."[5] Subsequent to Clarification 1, the Parties continued to disagree on the interpretation of Clarification 1's language and asked the Arbitrators to explain in further detail the benefits that the Award granted the Grievants. The Arbitrators obliged and issued Clarification 2, which ruled that the Grievants were entitled to the equivalent of past 401(k) benefits for the years 2000, 2001, and 2002; vacation allowance for the years 2000, 2001, and 2002; and that Grievants were eligible for a 2002 Performance Award as if the Grievants had not been disciplined.[6]

Dow strenuously argues that the Arbitrators' Clarification 2 exceeded the scope of the CBA, and therefore, that Clarification 2's award of benefits cannot meet the essence test. Dow points to Article XIX of the CBA as the basis for all of its arguments. Article XIX states that the Arbitrators' decision "shall be within the scope and terms of this agreement and not change any of its terms or conditions." First, Dow argues that since the CBA does not contain a provision dealing with 401(k) plans, that any award for past 401(k) benefits cannot meet the essence test. Second, Dow contends that the Arbitrators contravened the CBA's express language by declaring the Grievants eligible for the 2002 Performance Award. Dow cites Exhibit E, Section 2, titled "Performance Award Program," which states, "Employees who during the year are placed on disciplinary probation as a result of an Employee Review Board decision, or who receive disciplinary time off will be excluded *from that year's* performance award." (emphasis added). Dow seizes upon "from that year's" language and argues the only possible interpretation of the italicized language is that any year an employee is on

---

5. Clarification 1 continued, stating, "The intent of this panel, as described in the award, is to make the Grievants whole with regard to these rights and benefits, including all their pension benefits."

6. The Background section of this Order lists in full Clarification 2's specific award.

disciplinary probation for one day or more, then that employee is ineligible for the Performance Award for the entire year. Hence, Dow argues that since Grievants were suspended for part of 2002, Grievants are ineligible for a 2002 Performance Award. Last, Dow contends that Article XI, titled "Vacations," only provides for vacation allowance if the Grievants "have drawn pay for at least 1040 hours during the preceding calendar year." Dow argues that since the Grievants did not work in 2001, then they cannot accrue vacation in 2001 to be taken in 2002. Therefore, Dow urges this Court to vacate the portion of the Arbitrators' Award that provides Grievants with 2001 vacation allowance because the Arbitrators allegedly did not follow the express terms of the CBA. The Union counters by urging the Court to be mindful of its limited role in reviewing arbitration awards. Specifically, the Union cites *Enterprise Wheel,* which states:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.* There the need is for flexibility in meeting a wide variety of solutions. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

363 U.S. at 597, 80 S.Ct. at 1361 (emphasis added). The Union argues that since the CBA had no provision detailing the types and appropriateness of remedies that the Arbitrators could award, the Parties' intent was to let the Arbitrator's formulate the most equitable remedy rather than try to detail a comprehensive scheme in the CBA.

█ The Court again compliments the Parties' counsel on their briefing and argu-

ments. Having considered the particular facts, the Parties' arguments, and the applicable law, the Court finds the Union's arguments persuasive. First, ordering Dow to consider the Grievants for a 2002 Performance Award as if they had not been disciplined in 2002 is not inconsistent with the CBA. The CBA says that those receiving disciplinary time off "will be excluded from *that year's* performance award." The Grievants were undisputedly disciplined in 2000. The Court finds that the applicable CBA provision is ambiguous because that language could have at least two meanings: (1) an employee is ineligible for a Performance Award every year if he is on disciplinary probation for one day or more during that year (2000, 2001, and 2002 in this case); or (2) employees are ineligible for Performance Awards during the year that they are first disciplined (2000 in this case). The Court is not privy to the Arbitrators' rationale for Clarification 2's order requiring Grievants consideration for a 2002 Performance Award. However, the Court need only ensure that their Award draws its essence from the CBA. *See Misco,* 484 U.S. at 36, 108 S.Ct. at 369. Believing that the applicable provision of the CBA is ambiguous, the Court concludes the Arbitrators arguably construed the applicable CBA provision quoted above in making this particular award; thus, the Arbitrators' decision to declare the Grievants eligible for a 2002 Performance Award should not be disturbed. *See Misco,* 484 U.S. at 38, 108 S.Ct. at 371 (explaining that an arbitration award should be affirmed "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority").

█ Next, the Court will consider together whether Clarification 2's award of 2001 vacation allowance and past 401(k) benefits fails the essence test. Dow ar-

gues any award of past benefits that the CBA does not expressly provide for must fail the essence test because the CBA requires the Arbitrators' decision to "be within the scope and terms of this agreement and shall not change any of its terms or conditions." The Court is well aware that "arbitral action contrary to express contractual provisions will not be respected." *Delta Queen*, 889 F.2d at 604; *see also Bruce Hardwood Floors v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 453 (5th Cir.1997). However, the Court believes that in the instant case, the Arbitrators' Award did not contravene express contractual provisions in the CBA. In *Bruce Hardwood*, the Fifth Circuit found that the arbitrator exceeded his authority by fashioning a remedy outside the collective bargaining agreement because the arbitrator found that the grievant violated the collective bargaining agreement, but then failed to impose the penalty the collective bargaining agreement mandated for that conduct. 103 F.3d at 453. The facts of this case are distinguishable from *Bruce Hardwood*. Unlike *Bruce Hardwood*, the CBA does not provide what conduct is punishable, much less, what remedies, if any, are available to either Dow or the Union. As such, the Arbitrators could not have based their Clarification 2 solely upon the CBA because the CBA does not contain one provision on what remedies are available to the Parties if the CBA is violated.

Dow's argument that any remedy outside the CBA's literal text automatically fails the essence standard, solely because of the CBA's language requiring the Arbitrators' award "to be within the scope and terms of this agreement and shall not change any of its terms or conditions," must fail. If Dow's argument were true, most arbitrations would be rendered worthless. The fallout of Dow's position is that Arbitrators would find themselves in the precarious situation of finding a violation of the CBA, but then being powerless to remedy the violation because this particular CBA does not contain one provision explaining the Parties' possible remedies. *See Marshall Durbin Poultry Co. v. United Food & Commercial Workers Union, Local 1991*, No. 2:98CV241PG, 2000 WL 33325702, at *6 (S.D.Miss. Apr.26, 2000) (affirming the arbitrator's award of reinstatement even though the collective bargaining agreement did not contain a provision that prohibited or provided for reinstatement). In *Marshall Durbin*, that Court reasoned that overturning an arbitrator's award merely because the collective bargaining agreement was silent on what remedies may be awarded would paralyze the ability of an arbitrator to right wrongs once the arbitrator found that a party violated an agreement. 2000 WL 33325702, at *6. The Court finds this reasoning compelling.

Generally, an arbitrator's award of a remedy should be affirmed even if the collective bargaining agreement "neither permit[s] nor preclude[s] such a remedy." *Executone*, 26 F.3d at 1325 (citing *Minute Maid Co. v. Citrus Workers, Local 444*, 331 F.2d 280, 281 (5th Cir.1964)). Courts are obligated to guard against arbitrators' awards that disregard collective bargaining agreements that expressly provide provisions detailing violations and the applicable remedies, as in *Bruce Hardwood*. 103 F.3d at 453. However, the Court rejects Dow's arguments that the Arbitrator's Award is contrary to express provisions of the CBA (limiting any decision to the CBA) merely because the CBA is silent upon the appropriate remedies. 401(k) benefits are not mentioned once in the entire CBA. Additionally, Article XI of the CBA, titled "Vacation," does not contain a provision for employees that are wrongfully terminated. The Court finds it difficult to

swallow that, hypothetically, if a Union member were fired because of the member's race, gender, and participation in Union activities (three obvious violations of the CBA), that member would not be able to receive appropriate relief in an arbitration because the CBA does not contain a specific section on remedies. This is the position that Dow asks the Court to take today. To do so would contravene this Court's obligation to exercise limited review of arbitration awards, affording the greatest deference to the remedies selected. *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361. Accordingly, the Court finds that the Arbitrator's Award meets the essence test because the CBA is silent on whether reinstated Grievants may obtain past 401(k) benefits and past vacation allowance. For all of the reasons expressed above, the Court **PARTIALLY GRANTS** the Union's Summary Judgment seeking to enforce the Arbitrators' award of past benefits, and **PARTIALLY DENIES** Dow's Summary Judgment seeking to partially vacate the Arbitrators' Award, specifically, the Award's holding that Grievants were entitled to the equivalent of past 401(k) benefits for the years 2000, 2001, and 2002; vacation allowance for 2002; and eligible for a 2002 Performance Award as if the Grievants had not been disciplined.

### E. Conclusion

For all the reasons stated above, the Court **PARTIALLY GRANTS** Dow's Summary Judgment and **VACATES** the Award's reinstatement of Bonner, and **PARTIALLY DENIES** the Union's Summary Judgment asking to affirm the Award's reinstatement of Bonner. Additionally, the Court **PARTIALLY GRANTS** the Union's Summary Judgment seeking to affirm the Arbitrators' Award, which granted the Grievants the equivalent of past 401(k) benefits for the years 2000, 2001, and 2002; vacation allowance for 2001; and declared Grievants eligible for a 2002 Performance Award as if they had not been disciplined, and **ORDERS** the Arbitrators's Award enforcement. Conversely, Dow's Summary Judgment is **PARTIALLY DENIED** on the same issue. Each Party shall bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**