**EXXON MOBIL CORPORATION**

v.

**PAPER,          ALLIED–INDUSTRIAL CHEMICAL AND ENERGY WORKERS INTERNATIONAL UNION, LOCAL 4–12, a/k/a Baton Rouge Oil and Chemical Workers Union**

No. CIV.A. 04–0236.

United States District Court, M.D. Louisiana.

Aug. 9, 2005.

William R. D'Armond, A. Edward Hardin, Jr., Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Plaintiffs.

Julie Richard–Spencer, Robein, Urann & Lurye, Metairie, La, for Defendants.

## RULING

JOHN V. PARKER, District Judge.

This matter is before the court on a motion for summary judgment (doc. 11) by plaintiff, Exxon Mobil Corporation ("ExxonMobil"). Defendant, Paper, Allied–Industrial Chemical and Energy Workers International Union, Local 4–12, a/k/a Baton Rouge Oil and Chemical Workers Union (the "Union"), has filed an opposition (doc. 20). Jurisdiction is based on 29 U.S.C. § 185. There is no need for oral argument.

## FACTS

The following facts material to the motion now before the court were taken verbatim from ExxonMobil's "Statement of Material Facts As To Which There Exists No Genuine Issue" (doc. 30). The Union has admitted each of the following facts in its response (doc. 19).

1. ExxonMobil owns and operates a chemical plant at Baton Rouge, Louisiana. Paper–Allied Industrial Chemical and Energy Workers International Union, Local 4–12, a/k/a Baton Rouge Oil and Chemical Workers Union ("the union") is the union that represents some of the ExxonMobil employees at the Baton Rouge plant.

2. ExxonMobil and the union have been parties to several collective bargaining agreements for many years. The underlying grievance involved in this case arose during the term of the collective bargaining agreement that was effective from April 1, 1996 to March 31, 1999. With the exception of provisions dealing with wages, the current collective bargaining agreement is identical to the agreement in place at the time of the grievance.

3. The collective bargaining agreement between the parties contains a grievance and arbitration procedure.

4. ExxonMobil denied the grievance underlying this suit at the final step of the grievance procedure in April 1997.

5. Pursuant to Section 253 of the collective bargaining agreement, attorneys for ExxonMobil and the union negotiated over the statement of the issue to be presented to the arbitrator. Ultimately, the parties agreed on the issue to be presented to the arbitrator. The agreed issue for arbitration was: "Whether the use of electricians to perform work on Programmable Logic Controls ('PLC') violates the Collective Bargaining Agreement? If so, what is the appropriate remedy?"

6. The parties selected James W. Hoose to serve as arbitrator. Mr. Hoose held a hearing on October 27, 2003, and he rendered his decision on January 13, 2004.

The underlying grievance was filed by Gary Foster, an instrument technician represented by the Union. In 1996, ExxonMobil installed a new PLC at the Escorez Unit at its Baton Rouge plant. In October of 1996, Foster was called to the Escorez Unit because of a problem with the PLC. When he arrived, Foster found Floyd McGehee, an electrician, troubleshooting the problem. Electricians at ExxonMobil's Baton Rouge plant are represented by the International Brotherhood of Electrical Workers ("IBEW") under a separate collective bargaining agreement.

Foster filed a grievance under the collective bargaining agreement between ExxonMobil and the Union (the "CBA"), asserting that he should have been assigned to troubleshoot problems with the PLC in the Escorez Unit. Foster requested reimbursement for the occasions when McGehee had been called instead. ExxonMobil denied the grievance at the final step of the grievance procedure, and the Union made a timely demand for arbitration.

The arbitrator found that ExxonMobil's use of electricians to perform work on PLCs did not violate the CBA, thereby deciding the issue presented to him by the parties. (doc. 20, Exh. 2, p. 7). The arbitrator also "took the liberty" to express his opinion regarding what he called an issue "implied at the hearing": did ExxonMobil violate the CBA when it assigned McGehee to service the PLC in the Escorez Unit? (doc. 20, Exh. 2, p. 7).

The arbitrator found that Foster had been responsible for performing all PLC work in the Escorez Unit during the five years preceding 1996. He found this to be a "rather strong case of 'past practice.'" *Id.* at pp. 6–7. Based on this past practice, the arbitrator concluded that ExxonMobil should have assigned troubleshooting for the Escorez Unit PLC to Foster and awarded Foster compensation for wages lost as a result of McGehee being assigned to troubleshoot the PLC.

## LAW AND DISCUSSION

ExxonMobil moves for summary judgment vacating that portion of the arbitrator's award concerning the implied issue.

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of asserting the basis of the motion and demonstrating the absence of a genuine issue of material fact; he need not negate the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

Once the movant discharges his burden, the nonmovant must highlight specific facts which demonstrate that there is a genuine issue of material fact, but he may not rely upon allegations or denials of his pleading. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46. The nonmovant's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little,* 37 F.3d at 1075 (citations omitted). The court must resolve all factual inferences in favor of the nonmoving party, but only when the parties have each submitted contradictory factual evidence. *Id.*

### The Arbitrator's Decision

██ Judicial review of arbitration awards is limited. A court cannot set aside an arbitrator's decision if it draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice. *Houston Lighting & Power Co. v. Int'l Brotherhood of Electrical Workers, Local Union No. 66,* 71 F.3d 179, 182 (5th Cir. 1995) (citing *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n,* 889 F.2d 599, 602 (5th Cir.1989)). An arbitrator's decision draws its essence from

the collective bargaining agreement if it has a basis that "is rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement .... The award must, in some logical way, be derived from the wording or purpose of the contract." *Bruce Hardwood Floors, Div. of Triangle Pacific Corp. v. UBC, Southern Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 451–52 (5th Cir.1997) (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir.1994)).

■■■ Despite this deference, however, a court is "free to scrutinize an award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." *Houston Lighting & Power*, 71 F.3d at 182. The collective bargaining agreement defines the jurisdiction of the arbitrator. *Bruce Hardwood Floors*, 103 F.3d at 452. The arbitrator "can bind the parties only on issues that they have agreed to submit to him." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 583 (5th Cir.1980). If the court finds that the arbitrator exceeded his contractual authority, it may vacate the award. *Houston Lighting & Power*, 71 F.3d at 182 (citing *United States Postal Serv. v. American Postal Workers Union*, 922 F.2d 256, 258 (5th Cir.1991)); *see also E.I. DuPont de Nemours and Co. v. Local 900 of the Int'l Chemical Workers Union, AFL–CIO*, 968 F.2d 456, 458 (5th Cir.1992).

The collective bargaining agreement includes the following provisions concerning arbitration:

253. *Question to Be Arbitrated*

(a) Within 10 days after the receipt of such a demand for arbitration, the parties shall meet and try to agree upon the question to be arbitrated.

(b) If they do not agree upon the question at the meeting, either or both parties may ask the referee to determine the question to be arbitrated. The referee is the senior judge of the State's 19th Judicial District Court, or his designee.

(c) In determining the question to be arbitrated, the referee shall (after hearing the parties) select the question which, in his opinion, more fully, fairly and concisely states the issue which existed when the arbitrable grievance was presented and not satisfied.

\*    \*    \*    \*    \*    \*

256. *Decision*

The decision of the arbitrator shall be final and binding unless it is contrary to law. If the case involves termination, any consideration of a back pay remedy shall be restricted to one year following the date of termination.

(doc. 11, Exh. 1, p. 7).

ExxonMobil contends that in accordance with the collective bargaining agreement, the parties negotiated and agreed on a single issue to be arbitrated: whether ExxonMobil's use of electricians to perform work on PLCs violates the collective bargaining agreement? According to ExxonMobil, the implied issue (whether ExxonMobil violated the collective bargaining agreement when it assigned a specific electrician, McGehee, instead of Foster to troubleshoot the PLC in the Escorez Unit) was not before the arbitrator. ExxonMobil contends, therefore, that the arbitrator exceeded the authority granted him under the collective bargaining agreement when he framed and decided the implied issue. ExxonMobil further contends that the arbitrator's reliance on past practice in deciding the implied issue was impermissible.

The Union asserts that the issue presented to the arbitrator included the implied issue. In support, the Union notes that the issue it initially proposed was whether ExxonMobil's use of electricians to perform work on PLCs violated Article 751 of the Collective bargaining agreement. (doc. 11, Exh. 2). Article 751 involves merger of classifications.[1] ExxonMobil rejected the proposed issue because, according to ExxonMobil, Article 751 did not apply and, therefore, could not be the basis for an arbitrable issue. The parties agreed to remove the reference to Article 751 from the wording of the issue. In so doing, the Union asserts that the parties somehow broadened the issue to allow the arbitrator to "determine whether any violation of the Collective Bargaining Agreement existed . . . ." (doc. 20, p. 10).

The Union's argument is unconvincing.

■ There is no support for the Union's contention that the issue presented was broad enough to encompass any violation of the collective bargaining agreement. The issue presented by the parties focused on ExxonMobil's authority under the collective bargaining agreement to assign PLC work to electricians. On the other hand, the implied issue framed and decided by the arbitrator focused on ExxonMobil's authority to assign work that had been performed by a certain person for five years to another person. These are separate issues. This is evident from the arbitrator's decision. According to the arbitrator, the implied issue came not from the issue presented by the parties, but from his study of the testimony. (doc. 20, Exh. 2, p. 7). It was "not explicit in the issue, but implied at the hearing . . . ." *Id.* In stating, "Therefore, [the arbitrator] has taken the liberty to also express his opinion on that issue," the arbitrator acknowledged that the parties had not asked him to examine the issue. *Id.* Because the collective bargaining agreement provided that the issue to be arbitrated was to be decided by the parties if they could agree, and not by the arbitrator, the arbitrator exceeded the authority granted him under the collective bargaining agreement when he framed and decided the implied issue.

■ Even if the court assumes for the sake of argument that the arbitrator had the authority to decide the implied issue, the decision would still be improper because it fails to reference any provision of the collective bargaining agreement to support the decision. Broadly referencing the collective bargaining agreement is not sufficient. *Beaird Industries, Inc. v. Local 2297, Int'l Union,* 404 F.3d 942, 947 (5th Cir.2005). "The Arbitrator must show that the award is rationally inferable in some logical way from the agreement." *Id.* No such inference can be made here. Therefore, it cannot be said that the arbitrator's decision regarding this issue draws its essence from the collective bargaining agreement.

Accordingly, the court owes no deference to the portion of the arbitrator's award involving the implied issue, and it exceeds the authority granted to him.

## CONCLUSION

For the foregoing reasons, the motion by plaintiff, ExxonMobil, for summary

---

1. That provision provided:

   751. *Changes in Classifications*

   The Employer may create new classifications and change the content of existing classifications. But the Employer will not, without the Agreement of the Union, merge any existing classification with another existing classification by taking away significant duties from the one and adding them to the other, or merge any existing classification with a new classification by including in the new classification significant duties of any existing classification.

judgment (doc. 11) is hereby **GRANTED** and judgment shall be entered in favor of ExxonMobil, vacating that portion of the arbitrator's award involving the implied issue.