INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, DISTRICT 776, Plaintiff-Appellant,

v.

TEXAS STEEL COMPANY, Defendant-Appellee.

No. 79–3868.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 13, 1981.

James L. Hicks, Jr., Dallas, Tex., for plaintiff-appellant.

Mueller & Mueller, Harold E. Mueller, Denning Schattman, Fort Worth, Tex., for defendant-appellee.

Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

Following the district court's enforcement of a supplemental labor arbitration award, the Union moved for attorneys' fees incurred in obtaining enforcement of the award. The district court held that the company's professed reasons for its refusal to abide by the award, although meritless, were not asserted "without justification," and consequently refused to award attorneys' fees. The Union appeals. Finding that the Company has persistently refused to honor its obligation to the federal labor policy favoring the voluntary arbitration of

labor disputes, we hold that the district court abused its discretion in refusing to award attorneys' fees to the Union, and remand for a determination of the amount of attorneys' fees properly awardable.

## I.

This is the second time that the present case has reached this Court. In *International Association of Machinists and Aerospace Workers, District 776 v. Texas Steel Company*, 538 F.2d 1116 (5th Cir. 1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977) (hereinafter referred to as Texas Steel I), this Court affirmed the district court's enforcement of a labor arbitration award, and remanded the Union's request for attorneys' fees for a determination of whether the Company's refusal to abide by the award was "without justification." On remand, the district court held that the Company's refusal indeed was without justification, and assessed attorneys' fees, which the Company paid.

Before the enforced award could be implemented, however, a dispute arose concerning the scope of the remedy. The Company contended that the original grievance, which was filed by A. J. Hurry, was an individual grievance, and that the enforced award, which ordered payment of a wage increase and back pay, therefore applied only to him. The Union disagreed, and argued that the enforced award applied to all "loadout leadmen"[1] in the Company's employ. On December 29, 1977, the district court remanded the case to the neutral arbitrator for resolution of two issues:

(a) whether the arbitrator intended that the award grant back pay to all loadout leadmen (as opposed to merely granting back pay to A. J. Hurry); and

(b) whether it was the intent of the arbitrator that the wage increase apply prospectively and, if so, was it intended to apply to all loadout leadmen or merely A. J. Hurry.

The Company thereafter filed a motion to set aside the order of December 29, which the district court denied. On March 31, 1978, the neutral arbitrator issued his opinion, which answered the aforementioned questions as follows:

(a) The Arbitrator intended that the Award grant back pay to all loadout leadmen and not merely to A. J. Hurry; and

(b) It was the intention that the wage increase apply prospectively to all loadout leadmen.

The Union again moved the district court for enforcement of the award on April 5, 1978. In response, the Company argued, inter alia, that the contract between the Union and the Company required all disputes to be submitted not to a single arbitrator, but to a three-member arbitration panel. Based upon this objection, the district court denied enforcement of the award on September 7, 1978, and remanded the previously submitted and answered issues to the three-member panel. By its Supplemental Award dated December 20, 1978, a majority of the panel reaffirmed the decision of the neutral arbitrator:[2]

(a) The panel intended that the Award of November 24, 1973, grant back pay to all loadout leadmen and not to A. J. Hurry merely, and

(b) It was the intention of the Panel that the wage increase apply prospectively to all loadout leadmen.

1. The function of "Loadout Leadmen" was to coordinate the ground crews and crane operators employed in the Company's shipping yard operation. The collective bargaining agreement between the Company and Union provided, in part, that Loadout Leadmen would be paid "at least $.20 above highest led classification rate." Leadman Hurry was paid $3.15—20 cents per hour above what the highest paid ground crew members received. The crane operators, however, were paid $3.38 under the

contract. Hurry thereupon filed a grievance, asserting that loadout leadmen "led" the crane operators as well as the ground crew members, and that he should be paid $3.58 per hour. The arbitration panel agreed, and the district court enforced the award, whereupon this Court affirmed that determination. *See* 538 F.2d at 1118–19.

2. The Company representative on the panel issued his dissent on January 2, 1979.

As it had done with respect to the decision of the neutral arbitrator, the Company refused to abide by the Supplemental Award, and the Union moved the district court for enforcement on January 9, 1979. In response to an order of the district court dated February 12, 1979, which afforded the Company twenty days to show cause why the Union's motion should not be granted, the Company filed a "Motion for Entry of Judgment" on February 27, 1979, an "Amended Motion for Entry of Judgment" on March 1, 1979, and a "Response to Plaintiff's Motion to Enforce" on July 5, 1979. Although the Company's "Response to Plaintiff's Motion to Enforce" is imprecise in its objections to the Supplemental Award, two reasons for the Company's refusal to abide by the Supplemental Award may be gleaned therefrom: (1) the Supplemental Award was ambiguous, because it did not specify whether employees entering the loadout leadmen classification after the effective date of the original award, or only those occupying the loadout leadman position on or before that date, were included; and (2) if the arbitration panel did intend for all loadout leadmen to be included in the original award, including those hired after its effective date, the panel was in error.

By its Memorandum Opinion and Order of October 25, 1979, the district court held that the Company's objections to enforcement of the Supplemental Award were "without merit." In response to the Company's first objection, the court found that the language "all loadout leadmen" contained in the Supplemental Award meant exactly that—*all* loadout leadmen, whenever hired. In concluding that "all" meant "all," the district court dismissed the Company's argument that the Supplemental Award was ambiguous. The district court characterized the Company's second challenge to the Supplemental Award as one to the authority of the arbitration panel to conduct its own procedure and to fashion an appropriate remedy—a matter clearly within the province of the arbitration panel, and not of the court. Based upon these conclusions, the district court granted the Union's motion for enforcement of the Supplemental Award.[3]

The district court, however, denied the Union's motion for attorneys' fees expended in connection with obtaining enforcement of the Supplemental Award. Without elaboration, the district court determined that the Company's objections "concerned the jurisdiction of the arbitrator and were made with justification and not in bad faith," *citing Texas Steel I*; and *District 50, United Mine Workers v. Bowman Transportation, Inc.*, 421 F.2d 934 (5th Cir. 1970). On appeal, the Union argues that because the Company's stated reasons for refusing to abide by the Supplemental Award were legally insufficient, the district court abused its discretion in refusing to award attorneys' fees against the Company.

## II.

Before reviewing the district court's determination that the Company's refusal to abide by the Supplemental Award was justified because it "concerned the jurisdiction of the arbitrator," it is first necessary to examine the principles generally applicable to challenges to arbitration decisions. As noted by this Court in *Texas Steel I*, the Supreme Court established in the "Steelworker's Trilogy" that a court may not address issues that go to the "intrinsic merits" of a dispute, and must limit its review to (1) whether the subject matter of the dispute is "arguably arbitrable"; and (2) whether the award draws its "essence" from the collective bargaining agreement. 538 F.2d at 1120. *See United Steel Workers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steel Workers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steel Workers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). "Arbitrability" is said to involve the jurisdiction of the arbitration panel, whereas the "essence" inquiry goes to

---

3. The Company did not appeal this order.

the validity of the award. 538 F.2d at 1122. In *Texas Steel I*, this Court held that the arbitration panel's decision satisfied both tests, and that the district court therefore was correct in enforcing the award. *Id.* at 1120–21.

As noted *supra*, the Company asserted two reasons for refusing to abide by the Supplemental Award: (1) the Award was ambiguous, because it did not expressly state whether employees hired after the effective date of the original award were included; and (2) if the Supplemental Award did so state, the arbitration panel exceeded its authority because the grievance was an individual one, and sought relief only for A. J. Hurry. Neither objection goes to whether the dispute was arbitrable or whether the award drew its "essence" from the agreement.[4]

Indeed, the Company's first argument appears to be no more than an attempt to find a new hair to split. Having obtained a remand to the arbitration panel for the specific purpose of clarifying the scope of the original award, and having received the panel's determination that the original award included all loadout leadmen and not merely A. J. Hurry, the Company still was not satisfied, but attempted to find within the word "all" a distinction between leadmen on the job on the date of the original award and those entering that job classification thereafter. Finding absolutely no basis in the Supplemental Award for such a distinction, the district court properly rejected that contention as without merit.

The Company's second objection to the Supplemental Award basically challenged the power of the arbitration panel to conduct its own procedure and to fashion an appropriate remedy. Essentially, the Company argued, as it had in the past, that

because the original grievance form was completed and signed by A. J. Hurry, and because Hurry checked the box marked "Individual Grievance," rather than the one marked "Union Grievance," any award resulting therefrom could extend only to that single grievant. Of course, this argument does not rely upon any perceived distinction between loadout leadmen hired before the date of the original award and those hired thereafter, but rather challenges the arbitration panel's power to award relief to *anyone* other than A. J. Hurry.

In holding that the original award contemplated a remedy extending beyond Hurry to all members of the loadout leadmen classification, the arbitration panel explained that, although the box marked "Individual Grievance" rather than the one marked "Union Grievance" had been checked on the grievance form, neither the collective bargaining agreement nor any prior dealings between the Company and the Union attached any significance to this distinction. The panel also noted that both the description of the grievance and the prayer for relief contained in the grievance form clearly referred to leadmen as a group, and not just A. J. Hurry.[5] Similarly, the arbitration panel noted that all of the evidence presented during arbitration related to leadmen generally, and did not focus on Hurry's individual situation. Finally, the panel noted that, in response to a question by the neutral arbitrator directed at the specific issue of the scope of the relief to be awarded, the Company representative was, at best, noncommittal. In conclusion, the panel correctly noted that labor grievances are not subject to the same niceties of pleading applicable in federal courts, and that, particularly in this context, substance must prevail over procedural technicalities.

4. As noted *supra*, the "arbitrability" and "essence" issues were both answered favorably to the Union in the first appeal.

5. As completed by Hurry, the grievance form stated in relevant part:
Statement upon which grievance is based: Working *leadmen* at lower rate of pay than highest classification *they* lead.

Remedy or correction requested: that the higher rate be paid to *leadmen* and *they* be compensated for all monetary losses suffered.
(emphasis added). The arbitrator also observed that the Company's interpretation of the original grievance necessarily would result in discrimination against other loadout leadmen in the Company's employ.

█ When determining whether an attack upon the scope of an arbitrator's award is justified it is of course fundamental that an arbitrator may decide only those issues submitted to arbitration, and that courts will refuse to enforce an award when the arbitrator exceeds its power. *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979). An arbitrator can bind parties only on issues that they have agreed to submit to arbitration, and whether an arbitrator has exceeded those bounds is an issue that courts properly may decide. *Piggly Wiggly Operator's Warehouse, Inc. v. Piggly Wiggly Operator's Warehouse Independent Truck Drivers' Union Local No. 1*, 611 F.2d 580 (5th Cir. 1980). Such an inquiry must be properly limited, however, because an arbitration award is not subject to judicial review on the merits. 611 F.2d at 583.

Moreover, a court must be mindful of the broad discretion accorded arbitrators in fashioning appropriate remedies. In *United Steel Workers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), the Supreme Court emphasized

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.

This principle is fully applicable to an arbitrator's decision on procedural matters that arise during the course of arbitration. For example, in response to the employer's argument that the arbitrator's decision exceeded the scope of the issue that was submitted to him, this Court in *Waverly Mineral Products Co. v. United Steelworkers of America, AFL–CIO, Local No. 8290*, 633 F.2d 682, 685 (5th Cir. 1980) held that:

> We think it was for the arbitrator to decide just what the issue was that was submitted to it and argued by the parties. "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration,

'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). Similarly, in *New Orleans Steamship Association v. General Longshore Workers*, 626 F.2d 455, 468 (5th Cir. 1980) this Court emphasized that

> [w]hether [an] award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties, neither the district court nor this court should decide. If the parties do not agree, that issue itself is a proper subject for arbitration.

When a dispute arose in the case *sub judice* concerning the scope of the original award, the district court properly remanded that issue to the arbitration panel. In making its determination, the panel did not exceed the relief prayed for in the grievance, and the Company's "Response to Plaintiff's Motion to Enforce" refers to no authority for its assertion that the arbitration panel exceeded its power in interpreting the original award.

█ A district court's refusal to award attorneys' fees in these circumstances is subject to review only for abuse of discretion. *Texas Steel I*, 538 F.2d at 1121–22. Moreover, when determining whether a party's refusal to abide by an arbitration decision was "without justification" such as to authorize an award of attorneys' fees to the party seeking enforcement, it is of course not enough merely to conclude that because the challenge was unsuccessful, it therefore was "without justification." By parity of reasoning, however, the mere assertion that the grounds for a party's refusal to abide by the award concerned the arbitrator's power to make the award does not compel the conclusion that the party's position must have been justified. Practically any contention could be so characterized. Rather, the court must look to the realities of the situation. Certainly, cases may arise in which an award exceeds the power conferred upon the arbitrator. *See Totem Marine Tug & Boat, Inc. v. North*

*American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979). In those cases, a challenge is proper, and the award will not be enforced to the extent that it exceeds the arbitrator's authority. In the case *sub judice*, however, the Company's objection, properly characterized, addressed not the arbitrator's jurisdiction, but rather the panel's action on a matter involving the "intrinsic merits" of the dispute, i. e., the panel's interpretation of the grievance and its broad discretion in fashioning an appropriate remedy. As noted *supra*, these grounds for attacking an arbitration award, no matter how characterized, are without merit, and a refusal to abide by a decision based upon such grounds is "without justification." 538 F.2d at 1122. Consequently, we hold that the district court abused its discretion in refusing to award attorneys' fees against the Company.

As this Court stated in the earlier appeal of this case, "[w]e refuse to countenance frivolous and wasteful judicial challenges to conscientious and fair arbitration decisions." 538 F.2d at 1122. The federal labor policy favoring voluntary arbitration dictates that when a refusal to abide by an arbitration decision is without justification, and judicial enforcement is necessary, the court should award the party seeking enforcement reasonable costs and attorneys' fees incurred in that effort. This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litigation.

On remand, the district court should take whatever evidence is necessary to determine the amount of attorneys' fees that will reasonably compensate the Union for obtaining enforcement of the Supplemental Award, including the attorneys' fees incurred by the Union in prosecuting this appeal. In reaching its decision, the court shall make findings consistent with this Court's decision in *Johnson v. Georgia Highway Express Co.*, 488 F.2d 714 (5th Cir. 1974).

REVERSED AND REMANDED.