# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40593

United States Court of Appeals
Fifth Circuit

**FILED**

June 1, 2018

Lyle W. Cayce
Clerk

DELEK REFINING, LIMITED,

    Plaintiff - Appellant

v.

LOCAL 202, UNITED STEEL, PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION, AFLCIO,

    Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, SOUTHWICK, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Instead of using its employees, Delek Refining hired contract workers to replace a chemical reactor at one of its refineries. An arbitrator found that doing so violated the company's collective bargaining agreement (CBA), which requires that employees get first crack at new work unless certain exceptions apply. In light of this provision and the deference courts give to arbitrators' decisions, we agree with the district court that Delek's challenge to the award should be dismissed. We also agree that the union is entitled to attorneys' fees for having to defend the award in court.

No. 17-40593

## I.

In 2012, Delek and the union representing the company's refinery employees entered into the CBA. This appeal arises out of Delek's decision that same year to replace the primary chemical reactor within the refinery's Alkylation-Cryogenic Unit. The project required a complete shutdown of the unit and took roughly four weeks to complete. Delek hired 50 full-time contract workers to finish the preparation and over 200 such workers during much of time the unit was shut down and the reactor replaced. It did assign some employees to the project. Eight maintenance employees served as "contract coordinators," with others performing more limited tasks. Delek contends it did not use more employees because it needed them to do day-to-day maintenance tasks at the refinery and because the replacement of the reactor required specialized work that the employees were not certified to perform. The union filed a grievance, arguing that Delek violated the CBA by using contract workers instead of maintenance employees and that in so doing it deprived the employees of overtime pay.

Article 1.4 of the CBA contains a broad management rights provision under which the union "recognizes that the right of Management is to manage the plant, to hire, fire and discipline for just cause." But those rights are "subject to and restricted by the specific provisions" of the CBA. Among those provisions is Article 8.1, which addresses the use of contract workers and reads: "Unless necessitated by extreme economic, safety or environmental reasons, the Company shall offer any maintenance, operations, environmental or material handling work to Bargaining Unit employees prior to utilizing contractors to perform such work, providing such use of Bargaining Unit employees does not result in excessive overtime."

The parties also agreed to have grievances like this one decided by an arbitrator whom the CBA grants "jurisdiction and authority to interpret and

2

apply the provisions in the determination of such grievance but he shall not have jurisdiction or authority to add to or alter in any way the provisions of this Contract." The arbitrator's decision is "final and binding."

The arbitrator held a one-day hearing before sustaining the union's grievance in a written opinion. Delek contended that "other applicable provisions" of the CBA "cloak[ed] Section 8.1's requirements with an essential and implicit element of reasonableness," and its principal justification for hiring the contract workers was that using more maintenance employees would have been unreasonable from a safety and environmental perspective given the scope of this project. Delek also argued in posthearing briefing that using additional employees would have resulted in excessive overtime.

After reciting the facts and relevant CBA provisions, the arbitrator concluded that the "language in Article 8.1 . . . is clear along with a long standing past practice on assigning work to the Bargaining Unit maintenance employees prior to hiring subcontractors." He thus awarded overtime pay to the maintenance employees who were not assigned to the project.

Delek interpreted the award to reach only the three weeks of preparatory work that occurred before the unit shutdown and reactor replacement. The union unsurprisingly disagreed with that limited view, as it excluded the period when the bulk of the contract workers were hired. In light of that disagreement, the union sought clarification from the arbitrator. The arbitrator responded that his decision applied to both the preparation and replacement phases of the project. In doing so, he stated that "Section 8.1 of the CBA is rather specific" and quoted its command that "The company shall offer any maintenance, operations, environmental or material work to Bargaining Unit employees prior to utilizing contractors to perform such work." This quotation did not include the caveats that appear at both the

No. 17-40593

beginning ("extreme economic, safety or environmental reasons") and end ("excessive overtime") of that provision.

Delek quickly latched onto the abbreviated quotation even though the request for clarification did not directly relate to either of those exceptions. The company sought further clarification, asserting that the arbitrator's email showed that he had misread Article 8.1 as giving bargaining unit employees an "unqualified" right to perform additional work. The arbitrator reviewed the four-page request for reconsideration and rejected it because Delek's view would "have the effect of making the contracting clause 8.1 meaningless" as any "[f]uture overtime work could be declared excessive and denied."

Still unsatisfied, Delek took the fight to federal court. The union counterclaimed, seeking compliance with the award and attorneys' fees. Both parties moved for summary judgment. The district court, agreeing with a magistrate judge's recommendation, denied Delek's motion, granted the union's, and awarded attorneys' fees.

## II.

We first examine Delek's contention that the district court erred in upholding the arbitral award. A perceived benefit of arbitration is that it may provide a more efficient means of resolving disputes. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568–69 (2013). Tacking judicial review onto arbitration undermines much of the savings in cost and time the arbitration achieves. *See id.*; *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). So, as fans of the New England Patriots and Dallas Cowboys have recently learned, a court's review of arbitral awards interpreting labor agreements is "exceedingly deferential." *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004) (noting that courts overturn such awards only on "very narrow grounds"); *see NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (applying that deference to the

detriment of Tom Brady); *see also NFL Players Ass'n v. NFL*, 874 F.3d 222, 227–28 (5th Cir. 2017) (finding the lawsuit premature because the arbitrator had yet to make a final decision that was unfavorable to Ezekiel Elliott).  As long as an arbitrator's decision draws its essence from the CBA, we will sustain it.  *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320, 1324 (5th Cir. 1994); *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (noting that an arbitrator cannot fashion his "own brand of industrial justice" (quoting *Enterprise Wheel*, 363 U.S. at 597)).  This deference means that even if we believe the arbitrator seriously erred in his fact finding or contract interpretation, *Misco*, 484 U.S. at 38, we will uphold a decision that is rationally inferable from the purpose of the CBA.  *Executone*, 26 F.3d at 1325.

Though this court interprets that essence standard "expansively," an arbitrator's power is not unlimited.  *Dow Chem. Co. v. Local No. 564, Int'l Union of Operating Eng'rs*, 83 F. App'x 648, 651–52 (5th Cir. 2003).  Our deference does not extend to those instances when the arbitrator exceeds the jurisdictional limits drawn in a CBA, *Albermarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 824 (5th Cir. 2013), or acts contrary to its express provisions, *Smith v. Transp. Workers Union of Am., Local 556*, 374 F.3d 372, 375 (5th Cir. 2004).  An arbitrator cannot, for example, ignore the plain language of a contract.  *Misco*, 484 U.S. at 38; *see, e.g.*, *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602–04 (5th Cir. 1989) (overturning the arbitrator's decision to reinstate a riverboat captain who the arbitrator found "grossly careless" because the CBA mandated discharge for carelessness).  In this situation an arbitrator is no longer applying or interpreting the agreement but rewriting it.

One of the rare situations when we have vacated an award because it rewrote the CBA involved the issue in this case: a decision to hire contractors. An arbitrator sustained the union's grievance challenging a company's decision

to hire contract workers in spite of a CBA provision granting management an unrestricted right to do just that. *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 945 (5th Cir. 2005). The arbitrator overrode that bargained-for-right because he was "not convinced that the cost savings realized from the subcontracting outweigh[ed] the adverse impact on the CBA." *Id.* A panel of this court vacated that award because no provision in the CBA modified the company's unambiguous right to hire contract workers. *Id.* at 946–47; *see also Rock-Tenn Co. v. Paper Workers Int'l Union*, 108 F. App'x 905, 907 (5th Cir. 2004) (vacating an arbitral award because it ignored an unrestricted contracting provision and "wrote into the CBA a new [limiting] provision").

In contrast to *Beaird*'s rejection of an arbitration award that directly conflicted with the CBA, we have repeatedly upheld prounion awards when the CBA was ambiguous or silent about a company's contracting rights. One of these cases involved a CBA clause preserving the company's preunionization ability to "determin[e] . . . the nature and extent of work, if any, to be contracted or transferred out and the persons, means and methods to be so utilized." *Folger Coffee Co. v. Int'l Union, Local Union No. 1805*, 905 F.2d 108, 109 n.3 (5th Cir. 1990). Despite management's negotiating a clause that preserved its general right hire contractors, the arbitration panel determined that without specific language defining the scope of that right the contracting decision must be made in good faith, represent a reasonable business determination, and not seriously weaken the union. *Id.* at 111. This court deferred to the arbitration panel's conclusion that Folger did not have "a carte blanche right" to contract, in part because the general purpose of the CBA was to strengthen ties between the company, its employees, and the union. *Id.* Given this determination that the clause granting the contracting rights was "neither specific nor unambiguous," the arbitrators properly considered other factors, and as a

result the award favoring the union drew its essence from the CBA.[1]  *Id.* at 111–12.  An easier case for deference involved a CBA that contemplated subcontractors would do some work, for example it discussed their rates of pay, but did not specifically grant the company a right to subcontract.  *See Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. & Energy Workers Int'l Union, Local 4-1201*, 480 F.3d 760, 762 (5th Cir. 2007).  In light of this silence about the circumstances in which contractors could be used, we deferred to the arbitrator's ruling that the CBA "does not permit wholesale subcontracting." *Id.* at 767.

The Delek CBA has something none of these other cases had: a provision prohibiting the use of contract workers until employees have been given an opportunity to perform the work.  In a sense it thus presents the opposite situation of *Beaird*.  To be sure, Article 8.1 contains two exceptions we have already noted.  Delek can overcome the bar on hiring contract workers if there were "extreme economic, safety or environmental reasons" for doing so or if giving the work to employees would result in "excessive overtime."  But "extreme" and "excessive" both connote situations outside the ordinary, indicating the default position is that bargaining unit employees should get first dibs on assignments.  Or at least an arbitrator could reasonably read Article 8.1 that way.  "Extreme" and "excessive" are also judgment-laden terms.  Because considerable discretion will be involved in determining whether one of these exceptional situations exists, it is difficult to see how an arbitrator's assessment of what is "extreme" or "excessive" can amount to the direct conflict with the CBA that is necessary for judicial override.  Delek's

---

[1] Though it has been questioned, *see Beaird*, 404 F.3d at 946, *Folger* remains binding law, *Folger Coffee Co. v. Int'l Union*, 368 F. App'x 605, 606 (5th Cir. 2010).  In any event, our decision has not depended on *Folger* because the CBA in this case has a default provision that employees be used before contractors.

challenge to the arbitral award applying a CBA that has a qualified ban on contracting thus starts on much weaker ground than the challenges we have previously considered involving CBAs with express or implicit provisions allowing contracting.

Perhaps recognizing this, Delek does not just contend that the arbitrator exercised bad judgment in refusing to find the exceptions applied; it also asserts that he ignored them altogether. This argument does not focus on the initial award. That decision, which was more than two single-spaced pages, relies on Article 8.1, which it quotes in full, exceptions and all. The arbitrator did not say that Delek failed to prove the exceptions, but not giving detailed reasons for an arbitral award does not amount to the clear contradiction of a CBA term that is needed for a successful court challenge. *Enterprise Wheel*, 363 U.S. at 598. Delek thus hangs its hat on the arbitrator's later response to the inquiry about whether his ruling applied only to the preparation phase. That one-paragraph email response again quoted Section 8.1 but recited only the general prohibition on contracting without repeating the exceptions that come before and after it. The shortened quotation prompted Delek to send a lengthy request for reconsideration asserting the exceptions, which the arbitrator denied.

Nothing in the clarification process leads us to vacate the award. It is understandable why the arbitrator, while citing the employee hiring preference in his email, did not mention the caveats. The question he was responding to had nothing to do with the exceptions or even involved Delek asking for reconsideration of the merits ruling on any basis; the parties only wanted to know how much overtime was owed. After the omission of the exceptions prompted Delek to seek reconsideration on the ground that the arbitrator had ignored them, the arbitrator disagreed and explained that Delek's view of the "excess overtime" language threatened to override the

No. 17-40593

Article 8.1 presumption that bargaining units would get first priority on work. Delek views this as the arbitrator reading the overtime language out of the contract. But the arbitrator's position that Delek's expansive view of the overtime provision would render the general ban on contracting meaningless is a reasonable one. If almost any overtime is "excessive," then the right the union bargained for in Article 8.1 is essentially worthless. In stating that only *excessive* overtime should allow Delek to hire contractors, the CBA recognized that Delek had to give employees the first option to take additional work if only some unspecified amount of ordinary overtime would result. The arbitrator was empowered to draw the line between routine and excessive overtime.

But even if the email clarifications create doubt about whether the arbitrator recognized the exceptions, ambiguity is not enough to vacate an award. *Enterprise Wheel*, 363 U.S. at 598; *see also Brown & Pipkins, LLC v. SEIU, Local 32BJ*, 846 F.3d 716, 724 (4th Cir. 2017) (rejecting the view that an arbitral award must be free of ambiguity to be upheld). A technical parsing of the informal emails the arbitrator provided in response to requests for clarification is not consistent with the substantial deference we owe arbitration decisions. "Arbitrators have no obligation to the court to give their reasons for an award." *Enterprise Wheel*, 363 U.S. at 598. Part of what a party gives up in agreeing to private dispute resolution is the greater process courts provide, although even in a judicial proceeding there is no guarantee that a party will receive detailed reasons for a decision. *See, e.g.*, 5TH CIR. R. 47.6 (allowing this court to affirm a ruling without an opinion in certain circumstances). Although explanations of arbitration awards are not required, they are of course better for the parties and reviewing courts. *Enterprise Wheel*, 363 U.S. at 598. So the Supreme Court has cautioned that overturning awards based on ambiguities that can be identified in the explanations arbitrators choose to give would discourage them from providing those reasons in the first place. *Id.*

9

No. 17-40593

That concern would be amplified if we were to use a lack of precision in a clarifying email to undo an arbitrator's decision when the result does not directly contravene the CBA.

The exceptions to the contracting ban require judgment calls. The parties agreed to be bound by the judgment of the arbitrator. Because the arbitrator's exercise of his discretion does not conflict with the CBA, we will not vacate the award.

## III.

For the same reason that judicial review of arbitration awards is limited, a party may be awarded attorneys' fees if it has to fight back a court challenge to the award it obtained in the parties' chosen forum. *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 639 F.2d 279, 284 (5th Cir. 1981) ("This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litigation."). Once a district court has awarded fees, we review only for abuse of discretion. *Bruce Hardwood Floors v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 453 (5th Cir. 1997).

The cases say that fees should be awarded when the challenge to the labor arbitration is "without justification." *Id.* This label has led to some confusion, with Delek arguing it suggests that fees should be awarded only if the party brought a frivolous challenge, meaning one that was "brought in bad faith to harass rather than to win." *See Lummus Glob. Amazonas, S.A. v. Aguaytia Energy Del Perud, S.R. Ltda.*, 256 F. Supp. 2d 594, 646 (S.D. Tex. 2002)[2] (noting that a prevailing party may be entitled to attorneys' fees when

---

[2] Delek also misreads this district court case. The case cites frivolity as a reason to award fees in addition to the fact that the challenge was "without justification." *Lummus* thus appears to recognize that a determination that a challenge was "without justification" does not require finding it was frivolous. 256 F. Supp. 2d at 646.

its opponent's challenge to an arbitral award is without justification or legally frivolous). This misreads the law. "Without justification" refers not to the strength of the challenge but to the type. On one side of the divide are challenges to an arbitrator's jurisdiction or authority, which do not result in a fee award even if they come up short. On the other are those that go to the "intrinsic merits" of a dispute, which justify fees even if not frivolous. *Compare Executone*, 26 F.3d at 1321 (refusing to award attorneys' fees because challenger argued award was "upon a matter not submitted" to the arbitrator), *with Texas Steel*, 639 F.2d at 284 (finding that fees should have been awarded in light of the company's challenge to an arbitrator's interpretation of a contract and discretion in fashioning a remedy). Court challenges to an arbitrator's jurisdiction are considered "justified" even if they do not succeed because it is a common judicial function to determine the scope of an arbitrator's jurisdiction. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (noting that courts ordinarily rule on the arbitrability of specific claims). *But see Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 492 (5th Cir. 2017) (finding that although courts presumptively determine the question of arbitrability, a court must first determine whether an agreement contains a delegation clause giving the arbitrator that power). But when parties have agreed to arbitrate a dispute, a subsequent court challenge to the merits is not justified even when that question is close because going to court is at odds with the parties' agreement to be bound by the arbitrator's decision.

This distinction forces parties that lose arbitration challenges to commonly do what Delek tries here: "attempt to transform [a merits] claim into an excess-of-powers claim." *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 412 (5th Cir. 2014). The company says that it was challenging the arbitrator's authority or jurisdiction in contending he

disregarded the two caveats and thus ignored the plain language of the contract.  But a party cannot avoid paying attorneys' fees by making only a conclusory assertion that it is challenging the arbitrator's "power to make the award."  *Texas Steel*, 639 F.2d at 283.  Delek's brief shows that is what it is doing here: in one breath the company argues that the arbitrator transcended his authority, while in another it asserts that he "exercised his contractual authority . . . inconsistent with applicable principles of contractual construction," which "necessarily touch[es] upon the 'intrinsic merits' of the case."  Delek's challenge goes to the merits as the central issue it raises is whether the arbitrator correctly interpreted and applied the exceptions in Article 8.1.  The district court therefore did not abuse its discretion in finding that challenge without justification and subject to a fee award.

***

The judgment of the district court is AFFIRMED.