# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2022

Lyle W. Cayce
Clerk

No. 21-10755

Ball Metal Beverage Container Corporation,

*Plaintiff—Appellee*,

*versus*

Local 129, United Automobile, Aerospace, and
Agricultural Implement Workers of America,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC 4:20-CV-797

Before Owen, *Chief Judge*, and Clement and Engelhardt, *Circuit Judges*.

Per Curiam:*

This labor dispute concerns an arbitrator's decision.  We uphold the award and reverse the contrary judgment of the district court.  The parties

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10755

may present their arguments regarding back pay and benefits from the date that the employee was prepared to return to work for arbitration.

## I

Ball Metal Beverage Container Corporation (Ball Metal) operates a beverage can plant in Fort Worth, Texas. Local 129, United Automobile, Aerospace, and Agricultural Implement Workers of America (Local 129) is a labor union that serves as the exclusive bargaining representative for some Ball Metal employees.

Ball Metal and Local 129 are parties to a collective bargaining agreement (CBA) that governs the terms of employment for employees represented by the union. The version of the CBA pertinent to this dispute contains a management rights provision that includes this provision:

> Except as otherwise expressly limited by this Agreement, all functions of management not otherwise relinquished or limited shall remain vested exclusively in the Company, including, but not limited to . . . hire, discipline, or discharge employees for just cause; . . . provided that these rights shall not be exercised in any manner which would constitute a breach of any other Article of this Agreement.

Another article of the agreement, titled "Disciplinary Actions and Discharge," provides: "The right of the Company to discipline or discharge employees for good cause including violations of this Agreement or Company rules is hereby acknowledged." Aside from these provisions, the CBA does not describe what constitutes just or good cause.

The CBA also outlines procedures for addressing grievances, including arbitration procedures. When the parties submit a dispute for arbitration, the arbitrator's decision "shall be final and binding on all parties." The arbitrator's authority, however, is constrained. The

agreement states that "[t]he jurisdiction of the arbitrator shall be limited to interpreting or determining compliance with the terms of this Agreement. The arbitrator shall have no power to add to or subtract from, to disregard or modify any part or all of the terms of this Agreement."

Ball Metal has rules and policies that govern misconduct. There is a plant rule against harassment as well as a company policy that prohibits discrimination, harassment, and retaliation. The plant rule defines harassment as activity "of a sexual nature, racial nature, a religious nature or any activity that can be construed as harassment." Employee training materials describe harassment as including "behavior towards another person which is unwelcome and personally offensive to [the] recipient and . . . creates an intimidating, offensive or hostile work environment."

Ball Metal does not prescribe any particular sanction for a harassment violation. The harassment policy provides only that violations "will subject th[e] employee to appropriate disciplinary action, up to and including termination." More generally, for violations of plant rules and company policies, "progressive discipline is to be followed except that steps for discipline 'may be accelerated depending upon the severity of the infraction and if there is a pattern of violation of any of the rules.'" The procedure is different for selected rules not at issue here whose violation "will result in automatic suspension for purpose of discharge."

Shawn Allen, a Ball Metal employee, was a member and an elected shop chairman of the union. He had worked at Ball Metal since 2006. In 2019, Allen was accused of harassing a coworker. Specifically, he was accused of yelling at the coworker and calling him a "f------g scab" after learning that the coworker had left the union. Allen had been accused of similar conduct in the past. He had not otherwise been disciplined for behavioral or productivity issues.

No. 21-10755

After an investigation, Ball Metal terminated Allen in late June 2019. Local 129 filed a grievance contesting the termination decision, which proceeded to arbitration. The parties presented these questions to the arbitrator: "Whether or not the Grievant, Shawn Allen, was terminated for proper cause and, if not, what is the appropriate remedy?"[1]

On July 6, 2020, the arbitrator issued an opinion and award. In the "DISCUSSION AND FINDINGS" section of the decision, the arbitrator determined that, "[u]nder the parties['] CBA, . . . the Company had proper cause to discipline the Grievant for violation of" Ball Metal's harassment policy and plant rule. The arbitrator also determined that, "[b]esides the CBA and Company Policy, the Grievant's conduct violated the Preamble of the CBA," which urged "promot[ing] a cooperative and progressive industrial and economic relationship between the Company and its employees." The arbitrator further explained that "while the Company's decision to terminate the Grievant was for just cause, the Arbitrator must give some recognition to his thirteen (13) years of service." He concluded that "based upon all the previous discussion the termination decision is modified in the following AWARD."

On the following page, under the heading "AWARD," the arbitrator wrote: "The Grievant, Shawn Allen was not terminated for proper cause, as the Company failed to give proper consideration to the Grievant's seniority."

---

[1] As noted, the CBA uses the terms "just cause" and "good cause," and the parties framed the issue for the arbitrator using a third term, "proper cause." The record shows no distinction in the meaning of the terms, and neither party argues for one. For ease of reading, we use the terms interchangeably. *Cf. Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989) (observing that the phrases "proper cause" and "just cause" "carr[y] no talismanic significance in labor jurisprudence" but rather are merely "term[s] of art that define[] the many unrelated, independent acts that serve as grounds for employee discipline").

The award provided that, instead of termination, Allen would be suspended from the date of his discharge to the date of his return to work; he would be offered immediate reinstatement without back pay or benefits; and he would retain his seniority.  In essence, the arbitrator reduced the sanction to a roughly yearlong unpaid suspension.

The day after the arbitrator issued the decision, Local 129 informed Ball Metal that Allen wanted to return to work and was prepared to do so immediately.  The company declined to reinstate him.  Instead, on July 30, 2020, Ball Metal filed suit under § 301 of the Labor Management Relations Act seeking vacatur of the arbitrator's award.  Local 129 counterclaimed seeking enforcement of the arbitrator's award, attorneys' fees, and back pay and benefits for the period of noncompliance since the award.  The parties filed cross motions for summary judgment.

The district court granted summary judgment in favor of Ball Metal and vacated the arbitrator's award.  The court held that the arbitrator exceeded his authority under the CBA by modifying Allen's sanction after stating that there was just cause for termination.  The court did not discuss the portion of the award in which the arbitrator stated that Allen "was not terminated for proper cause."  The court also denied attorneys' fees.  On appeal, Local 129 challenges the vacatur and attorneys' fees rulings.

## II

### A

We begin with the challenge to the vacatur ruling.  "We review a district court's grant of summary judgment in a suit to vacate an arbitration award *de novo*."[2]  Summary judgment is appropriate "if the movant shows

---

[2] *Beaird Indus., Inc. v. Local 2279,* 404 F.3d 942, 944 (5th Cir. 2005).

No. 21-10755

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

"Judicial review of arbitration awards is severely limited."[4] "The standard for this review is 'among the narrowest known to the law.'"[5] When an arbitration award settles a labor dispute, judicial review is "particularly constrained."[6] "The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations," which "reflect a decided preference for private settlement of labor disputes without the intervention of government."[7]

Under this unusually deferential standard of review, "courts are not authorized to reconsider the merits of an award."[8] "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits."[9] Instead of assessing how well the arbitrator interpreted the contract, we ask if the arbitrator acted within the contract's bounds.[10] "[A]n arbitrator is confined to interpretation and

---

[3] FED. R. CIV. P. 56(a).

[4] *Manville Forest Prods. Corp. v. United Paperworkers Int'l Union,* 831 F.2d 72, 74 (5th Cir. 1987).

[5] *Cont'l Airlines v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 405 (5th Cir. 2009) (quoting *E. Air Lines, Inc. v. Transp. Workers Union, Local 533*, 580 F.2d 169, 172 (5th Cir. 1978)).

[6] *Teamsters Local No. 5 v. Formosa Plastics Corp.*, 363 F.3d 368, 371 (5th Cir. 2004).

[7] *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 37 (1987).

[8] *Id.* at 36.

[9] *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *E. Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).

[10] *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *see also Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602

No. 21-10755

application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."[11]

To determine whether arbitrators have overstepped their authority, "courts apply the 'essence test,' evaluating whether the arbitration award 'ha[s] a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.'"[12] "[W]here the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end."[13] In these situations, "an arbitrator is no longer applying or interpreting the agreement but rewriting it," and we will vacate the award.[14] "Where 'there is ambiguity as to whether an arbitrator is acting within the scope of his authority,'" however, "'that ambiguity must be resolved in favor of the arbitrator.'"[15]

## B

Our decisions in *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*[16] and *Weber Aircraft Inc. v. General Warehouseman and Helpers Union Local 767*[17] are instructive, if not dispositive. In *Albemarle*, an arbitration award ordered suspension instead of termination for employees

---

(5th Cir. 1989) ("We have interpreted Supreme Court jurisprudence as requiring vacation of arbitral decisions that reinstate discharged employees when such arbitral action is deemed to be an ultra vires act.").

[11] *Id.*

[12] *Commc'ns Workers v. Sw. Bell Tel. Co.*, 953 F.3d 822, 826-27 (5th Cir. 2020) (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994)).

[13] *Delta Queen*, 889 F.2d at 602.

[14] *Delek Refin., Ltd. v. Local 202, United Steel*, 891 F.3d 566, 570 (5th Cir. 2018).

[15] *Quezada v. Bechtel OG & C Const. Servs. Inc.*, 946 F.3d 837, 844 (5th Cir. 2020).

[16] 703 F.3d 821 (5th Cir. 2013).

[17] 253 F.3d 821 (5th Cir. 2001).

who had violated safety rules.  We reversed the district court's vacatur of that award.[18]   The management rights clause in the CBA provided that "the suspending, disciplining and discharging employees for cause . . . are all rights solely of the COMPANY."[19]   We understood the clause to "contemplate[] situations in which a finding of 'cause' could support lesser sanctions than termination."[20]   We drew a distinction between this clause and clauses in other CBAs that provided only for discharge, from which "authority to impose a lesser alternative sanction cannot be arguably inferred."[21]

Because the CBA in *Albemarle* did not "make clear that any violation of safety rules is an offense requiring discharge," we accepted the interpretation of the arbitrator, who determined that the employees' violations were cause only for discipline, not termination.[22]   We acknowledged that "an arbitrator could quite naturally read the CBA to specify that Albemarle employees' jobs are contingent on strict adherence to safety rules," but we concluded that was "not the only arguable reading."[23] It was also permissible to read the CBA as the arbitrator had done and "infer degrees of punishment for infractions based on the egregiousness of

---

[18] *Albemarle*, 703 F.3d at 824, 828.

[19] *Id.* at 823.

[20] *Id.* at 825.

[21] *Id.* (quoting *Weber*, 253 F.3d at 825) (first citing *E.I. DuPont de Nemours & Co. v. Local 900 of Intern. Chem. Workers Union*, 986 F.2d 456, 459 (5th Cir. 1992); then citing *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 601, 603-04 (5th Cir. 1989)).

[22] *Id.*

[23] *Id.* at 826.

employee conduct," rather than "assume[] that all safety violations mandate the same, harsh penalty of termination."[24]

Similarly, in *Weber*, we reversed the district court's vacatur of an arbitration award that ordered suspension instead of termination for an employee who had committed sexual harassment.[25]  The employee had worked at the company for over twenty-five years.[26]  The CBA reserved for the employer "the right to . . . suspend, and/or discharge for just cause."[27]  For the harassment rule specifically, the CBA categorized violations as grounds for "Immediate Suspension for investigation/Possible Discharge."[28]  Although the arbitrator determined that the employee had engaged in sexual harassment, he decided that termination was "excessive, given the facts of the case and [the employee's] prior record of service."[29]

We held that the arbitrator was within "the ambit of his authority under the CBA by determining that, while there was not just cause to fire [the employee], there was just cause to suspend him without backpay for some eleven months."[30]  We accepted the arbitrator's interpretation of the CBA as "authorizing a range of punishment" for harassment violations.[31]  We deemed this reading "plausible because the CBA provides that [the] . . . violation calls for suspension and possible, not certain, discharge; and

---

[24] *Id.*

[25] *Weber*, 253 F.3d at 823-24.

[26] *Id.* at 823.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 824.

[31] *Id.*

because the CBA does not establish a fixed definition of 'just cause,' plainly indicating that the standard varies with the level of punishment."[32]  Given the flexibility within the provisions, "to find in favor of Weber's suspension or discharge of an employee, the arbitrator has to find that Weber had just cause *for the particular disciplinary action taken*."[33]

Like the CBAs in *Albermarle* and *Weber*, the CBA here "contemplates situations in which a finding of 'cause' could support lesser sanctions than termination."[34]  The management rights clause provides that Ball Metal could "hire, discipline, or discharge employees for just cause."  As in *Weber*, this provision suggests that "just cause" means "just cause for the particular disciplinary action taken."[35]  Indeed, when the parties framed the issue for the arbitrator, they did so in terms of the sanction and asked whether Allen "was terminated for proper cause."

We have determined "that explicating broad CBA terms like 'cause,' when left undefined by contract, is the arbitrator's charge."[36]  In addition to assessing the nature of the violations, an arbitrator may under our precedents take account of employee tenure in determining whether just cause for

---

[32] *Id.*

[33] *Id.* at 823 (emphasis added).

[34] *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 825 (5th Cir. 2013).

[35] *Weber*, 253 F.3d at 823.

[36] *Albemarle*, 703 F.3d at 826 (citing *Amalgamated Meat Cutters & Butcher Workmen, Dist. Local No. 540 v. Neuhoff Bros. Packers, Inc.*, 481 F.2d 817, 820 (5th Cir. 1973)); *see also Delek Refin., Ltd. v. Local 202, United Steel*, 891 F.3d 566, 571 (5th Cir. 2018) (the amount of discretion involved makes it difficult to see how an arbitrator's assessment of judgment-laden terms like "extreme" and "excessive" can amount to the direct conflict with the CBA that is necessary for judicial override).

discipline exists rather than for dismissal.[37] Had Ball Metal wished to remove consideration of any mitigating factors, it could have required termination for all harassment violations in the CBA or in company rules.[38] In fact, Ball Metal did designate violations of other rules as mandating "automatic suspension for purpose of discharge." The company did not place harassment violations like Allen's within that category, providing instead that they warranted "appropriate disciplinary action, up to and including termination." The flexibility in this disciplinary approach permitted the arbitrator to opt for a penalty short of termination. The penalty selected—unpaid suspension for over a year—was well within the arbitrator's discretion.[39]

In light of our precedents, we conclude that the arbitrator could construe the CBA to mean that Allen's violations were just cause for discipline, rather than just cause for termination, given the character of the violations and his tenure. We hold only that this interpretation is an

---

[37] *Weber*, 253 F.3d at 823; *see also Gulf States Tel. Co. v. Local 1692, Int'l Bhd. of Elec. Workers*, 416 F.2d 198, 200, 202 (5th Cir. 1969) (affirming the enforcement of an arbitration award in which the arbitrator determined that the employee's "previous record and seniority count for something in arguing against the extreme penalty in industrial relations").

[38] *Albemarle*, 703 F.3d at 826 ("Had the Company wished to remove doubt as to whether safety violations like the Grievants' met the criteria for cause to terminate, it had only 'to bargain for a specific list of violations that will be considered sufficient grounds for discharge' in the CBA.") (quoting *Amalgamated Meat Cutters & Butcher Workmen, Dist. Local No. 540 v. Neuhoff Bros. Packers, Inc.*, 481 F.2d 817, 820 (5th Cir. 1973)).

[39] *See United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations."); *Gulf States*, 416 F.2d at 202 n.10 ("Arbitral determination not only of the existence of misconduct but of the fitness of the punishment is routinely grist for the arbitral mill.").

"arguable reading" of the CBA, not that it is the best or even a good one.[40]
"The correctness of the arbitrator's interpretation is irrelevant so long as it
was an *interpretation*."[41]

## C

The arbitrator stated both that there was just cause for termination
and that there was not.  Given our especially deferential standard of review,
we are bound to resolve the ambiguity in the arbitrator's favor.[42]

In declining to terminate Allen, the arbitrator explained his reasoning
as follows:

> Under the parties['] CBA, the Arbitrator concludes that the
> Company had proper cause to discipline the Grievant for
> violation of the Company's Discrimination, Harassment, and
> Retaliation Policy (CX-4) and Plant Rules No. 21 . . . .  The
> Grievant's conduct created the violations and he alone must
> bear the repercussions.  Besides the CBA and Company Policy,
> the Grievant's conduct violated the Preamble of the CBA . . . .

> The Arbitrator is of the opinion, however, that while the
> Company's decision to terminate the Grievant was for just
> cause, the Arbitrator must give some recognition to his thirteen
> (13) years of service.  Accordingly, based upon all the previous
> discussion the termination decision is modified in the following
> award.

On the following page, labeled "AWARD," the arbitrator continued:
"The Grievant, Shawn Allen was not terminated for proper cause, as the

---

[40] *Albemarle*, 703 F.3d at 826.

[41] *Sun Coast Res., Inc. v. Conrad*, 956 F.3d 335, 337 (5th Cir. 2020).

[42] *Quezada v. Bechtel OG & C Const. Servs., Inc.*, 946 F.3d 837, 844 (5th Cir. 2020).

No. 21-10755

Company failed to give proper consideration to the Grievant's seniority." The award then set forth the terms of Allen's modified suspension sanction.

Ball Metal argues that the arbitrator exceeded his jurisdiction under the CBA because he impermissibly altered the sanction after he determined that there was just cause for termination. In Ball Metal's view, the arbitrator recognized that there was just cause to terminate Allen but then went on to factor in tenure, which he had no authority to consider at that point. Local 129 takes another view, emphasizing the arbitrator's later conclusion that there was not just cause for termination. The union reads the arbitrator's earlier reasoning to mean that Ball Metal had just cause to discipline, and could have had just cause for termination, but in the last analysis did not, because of Allen's seniority.

The arbitrator plainly stated that "the Company's decision to terminate the Grievant was for just cause," and then just as plainly stated that "the Grievant, Shawn Allen was not terminated for proper cause." Neither party has persuaded us that its interpretation stressing one rather than the other of these statements is the only possible reading. When there are two alternative constructions of an arbitrator's reasoning, one of which would uphold the decision, we must enforce the award. As the Supreme Court has explained, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."[43]  "Unless the

---

[43] *Enter. Wheel*, 363 U.S. at 598; *see also Wireglass Metal Trades Council v. Shaw Env't & Infrastructure Inc.*, 837 F.3d 1083, 1091-92 (11th Cir. 2016) ("The rule of Enterprise Wheel is that, when it is 'not apparent' from the arbitrator's stated reasoning (or lack thereof) whether she permissibly interpreted a collective bargaining agreement or impermissibly modified it, and one can plausibly read the award either way, the court must resolve the ambiguity by finding that the award is an interpretation of the contract and enforcing it.").

No. 21-10755

arbitral decision does not 'dra[w] its essence from the collective bargaining agreement,' a court is bound to enforce the award . . . even when the basis for the arbitrator's decision may be ambiguous."[44]

Given that arbitrators need not explain their reasoning at all, an ambiguity in reasoning generally will not disturb their awards. "It has long been settled that arbitrators are not required to disclose or explain the reasons underlying an award."[45] Although explanations of arbitration awards are not mandatory, they are desirable.[46] To encourage justification, the Supreme Court has advised against "overturning awards based on ambiguities that can be identified in the explanations arbitrators choose to give," since that "would discourage them from providing those reasons in the first place."[47] So long as "[w]e can discern a possible rationale from the arbitrator's actions, . . . his decision 'must stand.'"[48]

We deem possible the rationale that the union suggests: the arbitrator could have determined that the offense was not in fact just cause for termination in light of Allen's tenure. A Seventh Circuit case involving similar facts supports our conclusion. In *Arch of Illinois, Division of Apogee Coal Corp. v. District 12, United Mine Workers*,[49] the Seventh Circuit affirmed an arbitration award that ordered suspension instead of termination for an

---

[44] *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum, & Plastic Workers*, 461 U.S. 757, 764 (1983) (internal citation omitted) (quoting *Enter. Wheel*, 363 U.S. at 597 (1960)).

[45] *See Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 412 (5th Cir. 1990).

[46] *Delek Refin., Ltd. v. Local 202, United Steel*, 891 F.3d 566, 572 (5th Cir. 2018).

[47] *Id.* at 572-73.

[48] *Commc'ns Workers of Am. v. Sw. Bell Tel. Co.*, 953 F.3d 822, 828 (5th Cir. 2020) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)).

[49] 85 F.3d 1289 (7th Cir. 1996).

employee who had violated a rule against sleeping at work.[50]  Similar to the Ball Metal CBA, the Arch of Illinois CBA provided that covered employees could not be "disciplined or discharged except for just cause."[51]  Early in the opinion, the arbitrator observed that "sleeping is sufficient just cause to trigger a discharge" and described other concerns with the employee's conduct, concluding that, "[f]or all of those reasons therefore the grievant should be terminated."[52]  Later in the opinion, however, the arbitrator decided that the employee should be suspended rather than terminated, reasoning that "the senior person's length of service must be recognized when that individual is dealt with by way of termination."[53]

The company argued that the arbitrator had exceeded his authority by modifying the penalty after already determining that there was just cause for termination.[54]  The Seventh Circuit considered the company's interpretation reasonable but not inevitable.[55]  That was insufficient because the company "must do more than merely show that its interpretation of the opinion is reasonable; it must demonstrate that the opinion cannot reasonably be interpreted in any other way."[56]  The company did not make that showing.[57]  The alternative interpretation that the company "lacked just cause to discharge [the employee] because of its failure to consider his seniority is not

---

[50] *Id.* at 1291, 1294.

[51] *Id.* at 1291.

[52] *Id.*

[53] *Id.*

[54] *Id.* at 1293.

[55] *Id.*

[56] *Id.* (citing *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597-98 (1960)).

[57] *Id.*

No. 21-10755

so far-fetched as to lead us to deduce that the arbitrator relied on a noncontractual basis for the award."[58]  The court explained that, "before we reject an award because of language in the arbitrator's opinion, the opinion must unambiguously reflect that the arbitrator based his decision on noncontractual grounds."[59]

For similar reasons, we uphold the arbitrator's award in Allen's case. Because the opinion does not unambiguously reflect that the arbitrator exceeded his authority, we must enforce his award.

## III

We next address the union's challenge to the attorneys' fees ruling. We review the district court's denial of attorneys' fees for abuse of discretion.[60]  "For the same reason that judicial review of arbitration awards is limited, a party may be awarded attorneys' fees if it has to fight back a court challenge to the award it obtained in the parties' chosen forum."[61]  "This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litigation."[62]

Courts award fees when the challenge to the arbitrator's decision is "without justification."[63]  "'Without justification' refers not to the strength

---

[58] *Id.* at 1294.

[59] *Id.* at 1293.

[60] *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 301 (5th Cir. 2021).

[61] *Delek Refin., Ltd. v. Local 202, United Steel*, 891 F.3d 566, 573 (5th Cir. 2018).

[62] *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 639 F.2d 279, 283 (5th Cir. 1981).

[63] *Bruce Hardwood Floors v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 453 (5th Cir. 1997).

of the challenge but to the type."[64]  Challenges to an arbitrator's jurisdiction or authority do not result in fee awards, whereas challenges to the "intrinsic merits" of a dispute justify fee awards even if the challenges are not frivolous.[65]  "[W]hen parties have agreed to arbitrate a dispute, a subsequent court challenge to the merits is not justified even when that question is close because going to court is at odds with the parties' agreement to be bound by the arbitrator's decision."[66]

Ball Metal challenged the arbitrator's authority, so a fee award is unwarranted.  Throughout its brief, Ball Metal framed its challenge in jurisdictional terms.  The company consistently characterized the arbitrator's modified sanction as an action "exceeding his authority," rather than as a misreading of the contract's terms.[67]  Ball Metal did not contest the arbitrator's interpretation of "just cause for termination."[68]  Instead, Ball Metal assumed that the arbitrator had recognized just cause for termination and argued that he defied the limits on his authority that determination imposed.[69]  Because Ball Metal's challenge was jurisdictional, the district court did not abuse its discretion in denying a fee award.

---

[64] *Delek*, 891 F.3d at 573.

[65] *Id.*

[66] *Id.* at 573-74.

[67] *See id.* at 574 ("[A] party cannot avoid paying attorneys' fees by making only a conclusory assertion that it is challenging the arbitrator's 'power to make the award.'") (quoting *Tex. Steel Co.*, 639 F.2d at 283).

[68] *See id.* (holding that a challenge to an arbitrator's interpretation of a contract is a merits inquiry and awarding attorneys' fees); *Tex. Steel Co.*, 639 F.2d at 283-84 (holding that a challenge to an arbitrator's interpretation of a contract warranted attorneys' fees).

[69] *See Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1331 (5th Cir. 1994) (holding that a challenge to an award "upon a matter not submitted" to the arbitrator is a jurisdictional inquiry and denying attorneys' fees).

## IV

Finally, we address the parties' joint request for clarification about the award during the period of the company's noncompliance. Specifically, the parties request a remand to the arbitrator to determine whether to award back pay and benefits for this period.

The arbitrator's decision does not make clear what the award would be in the event of noncompliance. The award states that "[t]he Grievant will be offered immediate reinstatement without back pay and benefits," but it does not address whether back pay or benefits would be warranted if Allen was not offered immediate reinstatement. When, as here, an arbitrator's decision does not specify the award during a period of noncompliance, "the court is authorized to remand to the arbitrator" for clarification.[70] Since both parties have requested a remand for this purpose, we will order one.

\*     \*     \*

We REVERSE the award of summary judgment in favor of Ball Metal and RENDER judgment in favor of Local 129. We AFFIRM the denial of attorneys' fees. We REMAND to determine whether to award backpay and benefits during Ball Metal's period of noncompliance.

---

[70] *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union v. Excelsior Foundry Co.*, 56 F.3d 844, 849 (7th Cir. 1995); *see also United Steelworkers, Dist. 36, Local 8249 v. Adbill Mgmt. Corp.*, 754 F.2d 138, 141-42 (3d Cir. 1985); *Marshall Durbin Cos., Inc. v. United Food & Comm. Workers Union, Local 1991*, 254 F.3d 1081, 2001 WL 563907, at \*1 (5th Cir. 2001) (unpublished) (per curiam).